UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALEXANDRIA HOLLOWAY,

                        Plaintiff,

            -against-

THE CITY OF NEW YORK, *et al.*,

                    Defendants.
-----------------------------------------------------------X

                      **MEMORANDUM AND ORDER**
                        21 CV 3858 (AMD) (CLP)

**POLLAK**, United States Magistrate Judge:

        On July 9, 2021, plaintiff Alexandria Holloway ("Ms. Holloway" or "plaintiff")

commenced this action against defendants the City of New York (the "City") and John and Jane

Does 1 through 50 (the "Doe defendants"), bringing claims under both 42 U.S.C. § 1983 and

New York State Law for injuries she allegedly suffered when she was unlawfully arrested during

a protest. (Compl.[1]). On May 2, 2023, Ms. Holloway filed an Amended Complaint, naming as

additional defendants the New York City Police Department (the "NYPD") and Captain Tarik

Sheppard ("Captain Sheppard") in his individual capacity. (FAC[2]).

        Currently pending before this Court are: (1) Ms. Holloway's letter motion to deem facts

admitted and for sanctions, filed February 21, 2023 (the "Motion for Admissions" or "Mot.

Adm.") (ECF No. 27); (2) Ms. Holloway's letter motion to compel responses to her Second

Document Request and Interrogatories, also filed February 21, 2023 (the "First Motion to

Compel" or "First MTC") (ECF No. 28); and (3) Ms. Holloway's letter motion to compel the

production of records that may identify key eyewitnesses in response to her Third Document

Requests, filed April 13, 2023 (the "Second Motion to Compel" or "Second MTC") (ECF No.

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed July 9, 2021. (ECF No. 1).
[2] Citations to "FAC" refer to plaintiff's First Amended Complaint, filed on consent on May 2, 2023. (ECF No. 40).

35).  For the reasons set forth below, the Motion for Admissions is granted in part and denied in part; the First Motion to Compel is granted; and the Second Motion to Compel is granted.

BACKGROUND

This case is one of many resulting from the mass protests that followed in the wake of the police killings of George Floyd and Breonna Taylor in the Summer of 2020.  (See FAC ¶¶ 1, 12). Over the course of several months, people in New York City and elsewhere engaged in largely peaceful protests against police violence and brutality, and the racially disparate manner in which it is frequently carried out in the United States.  (Id.)

Ms. Holloway alleges that in order to "suppress" those protests and "terrorize" those who took part in them, the NYPD responded with excessive force and, at times, outright violence. (Id. ¶¶ 1, 63).  According to Ms. Holloway, she was "one of many New Yorkers who was violently attacked and unlawfully arrested by the NYPD" while "peacefully protesting in Brooklyn."  (Id. ¶ 2).  Specifically, she alleges that on the night of June 3, 2020, she participated in a protest and march that began at the Barclays Center and ended at Cadman Plaza West and Tillary Street in Brooklyn (the "Protest").  (Id. ¶ 11).  After the Protest reached Cadman Plaza— apparently after the 8:00 p.m. curfew had gone into effect—NYPD officers refused to allow the Protest to proceed onto the Brooklyn Bridge towards Manhattan.  (Id. ¶¶ 13–16).

At approximately 9:00 p.m., NYPD officers[3] surrounded a group of protestors who remained gathered in Cadman Plaza and, without provocation, "charge[d] at the protesters, . . . shoving them as they attempted to flee, and beating them with batons."  (Id. ¶¶ 17–20).  The officers then began to "indiscriminately arrest[]" the protestors without "cause or justification" and without any "violence [or] threat of violence" from the protestors.  (Id. ¶¶ 23–28, 35, 43–44).

---

[3] The attack against other protestors was allegedly carried out by Doe defendants #5-50.  (FAC ¶ 19 n.1).

For her part, Ms. Holloway was pushed to the ground by an unknown NYPD officer ("John Doe #1"),[4] who repeatedly struck her with a baton in her head, arms, shoulders, and back. (Id. ¶¶ 2, 33–37). John Doe #1 then handcuffed Ms. Holloway, allegedly causing bruising to Ms. Holloway's wrists because the cuffs were too tight. (Id. ¶¶ 38–39). John Doe #1 was allegedly assisted by two female officers ("Jane Doe #2" and "Jane Doe #3), who subsequently transported Ms. Holloway to a bus that would eventually transport her and others to jail. (Id. ¶¶ 40–41). None of the officers told Ms. Holloway why she was being arrested, nor did they advise her of her rights. (Id. ¶ 42).

Ms. Holloway then asked an individual whom she believed was a "commanding officer" why she was being arrested, and why he was allowing officers to "violently arrest peaceful protestors." (Id. ¶¶ 2, 45). The "commanding officer"—whom Ms. Holloway originally named as "John Doe #4" and subsequently identified as defendant Captain Sheppard—allegedly "responded by calling [Ms. Holloway] a 'bitch' and slamming her head into the window of a bus." (Compl. ¶¶ 2, 44–46; see also FAC ¶¶ 2, 45–47).[5] Ms. Holloway was then taken by bus to Brooklyn Central Booking ("BCB"), where she was searched, booked, interrogated, and placed in a holding cell until she was released at approximately 4:00 a.m. the next day. (FAC ¶¶ 48, 50–51, 54, 56). Throughout that time, Ms. Holloway received no medical attention, was never Mirandized (despite not consenting to interrogation), was never given the opportunity to make a phone call, and was deprived of basic necessities. (Id. ¶¶ 49, 52–53, 55).

---

[4] Ms. Holloway describes John Doe #1 as an NYPD officer and "a white male with black hair and dressed in riot gear." (FAC ¶ 33).

[5] Ms. Holloway claims that during a status conference held with this Court on November 22, 2022, the City identified Captain Sheppard as John Doe #4, based on Ms. Holloway's description of the officers involved. (Mot. Adm. at 3). The City denies that claim, indicating that it was plaintiff who had identified Sheppard as John Doe #4. (City's letter response, dated March 14, 2023 ("City's Resp. Mot. Adm.") (ECF No. 31) at 1). Instead, the City represent that at the November 22, 2022, conference, they advised the Court that the City "had not yet identified any of the John Doe officers." (Id.)

As a result of the attack by Captain Sheppard and other NYPD officers, Ms. Holloway "suffered physical and emotional injuries, including nerve and optical damage that threaten her career as a professional photographer," as well as "concussions; bruising; [and] bodily pain, including headaches and neck pains." (Id. ¶¶ 2, 57–58). She alleges that, as a result, she has "had to reduce the number of days she works per week" and has an impaired "ability to perform routine work functions," such as using ladders for photoshoots or spending significant periods of time shooting, "reading, using the computer, and traveling by train and car." (Id. ¶¶ 59–61). Ms. Holloway also alleges that her mental and emotional health have been impaired as a result of the incident. (Id. ¶ 62).

Ms. Holloway brings claims of excessive force, unlawful seizure, and false arrest pursuant to 42 U.S.C. § 1983, in connection with her arrest on June 3, 2020 (Claims 1–2). (Id. ¶¶ 98–113). Ms. Holloway also brings claims of false arrest, false imprisonment, assault and battery, negligent and intentional infliction of emotional distress, negligence, and negligent supervision, retention, and training, pursuant to New York State Law and the New York State Constitution (Claims 3–7). (Id. ¶¶ 114–141). Ms. Holloway seeks compensatory and punitive damages, as well as reasonable costs and attorney's fees. (Id. at 30).

## MOTION FOR ADMISSIONS AND SANCTIONS

Ms. Holloway filed her Motion for Admissions on February 21, 2023, requesting that this Court deem admitted several requests for admission. (Mot. Adm. at 1). She also seeks an award of monetary sanctions against the City and its counsel for not admitting to facts that the City has previously represented as true. (Id. at 7–8). Ms. Holloway's motion concerns seven requests for admission from her December 1, 2022, discovery requests, all of which relate to Captain

Sheppard and the identities of John Doe #1 and Jane Does #2 and #3 (collectively, the "RFAs"). (Id. at 1, 4–5; see also Pl.'s Ex. 3[6]).

Ms. Holloway argues that the City failed to respond to these RFAs in good faith and in compliance with Rule 36 of the Federal Rules of Civil Procedure. (Mot. Adm. at 1, 5–7). As a result, Ms. Holloway asks this Court to deem admitted each of the seven RFAs at issue. (Id.) She also argues that the Court should impose monetary sanctions upon the City for its deficient responses. (Id. at 1, 7–8). For the reasons explained below, this Court holds that the City's responses to the RFAs are deficient. The Court ORDERS the City to amend its responses to RFA Nos. 1–4 after additional discovery and deems admitted RFA Nos. 5–7. The Court defers judgment on Ms. Holloway's request for monetary sanctions.

I.    Legal Standard

Rule 36 of the Federal Rules of Civil Procedure authorizes parties to serve requests to admit the truth of facts, the application of law to fact, or opinions within the scope of discovery. Fed. R. Civ. P. 36(a)(1). Once admitted, a matter is considered "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b); see also T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 44 (S.D.N.Y 1997) (holding that "Rule 36 responses become, in effect, sworn evidence that is binding upon the respondent at trial"). Requests for admission are "not a discovery device" in the typical sense but, rather, a means for "obtaining admissions for the record of facts already known by the seeker." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 21 CV 7504, 2023 WL 1879521, at *3 (S.D.N.Y. Feb. 10, 2023).

---

[6] Citations to "Pl.'s Ex. 3" refer to the copy of the City's Responses and Objections to Plaintiff's First Set of Requests for Admission, dated January 23, 2023, and filed as Exhibit 3 to plaintiff's Motion for Admissions. (ECF No. 27-3).

When responding to requests for admission, the answering party must admit the matter, "specifically deny" the matter, or "state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). The answering party "may assert lack of knowledge or information as a reason for failing to admit or deny," but only if the party "states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny" the matter in question. Id.; see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 2023 WL 1879521, at *3 (noting that the answering party "has a duty to make a reasonable inquiry to obtain information that assists a party to admit or deny a particular matter" (internal quotation marks omitted)). "What constitutes reasonable inquiry and what material is readily obtainable" in any given case, however, "is a relative matter that depends upon the facts of each case." T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., 174 F.R.D. at 43 (internal quotation marks omitted). Courts have "substantial discretion under Rule 36 . . . to determine the propriety of both the requests and the answers and objections." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 2023 WL 1879521, at *3 (internal quotation marks omitted).

"On finding that an answer does not comply with [Rule 36(a)], the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6); see also Apex Oil Co. v. Belcher Co., 855 F.2d 1009, 1015 (2d Cir. 1988). The Court is not required to deem a matter admitted simply because the responding party failed to sufficiently answer the request. See Wu v. Seoul Garden, Inc., No. 16 CV 3613, 2018 WL 507315, at *6 (E.D.N.Y. Jan. 22, 2018) (collecting cases); Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL–CIO v. Tripodi, 913 F.Supp. 290, 293–94 (S.D.N.Y.1996). Rather, the question of how to best

remedy the deficiency must "be evaluated in the context of the entire case."  Billups v. West, No. 95 CV 1146, 1997 WL 100798, at *4 (S.D.N.Y. Mar. 6, 1997).

In determining the appropriate remedy, courts consider whether the requesting party would "suffer prejudice" should the court not deem the matter admitted, whether the deficiencies in the responses are "due to a lack of good faith," and whether permitting the responding party to amend their responses would "further the assessment of the merits of the case," Wu v. Seoul Garden, Inc., 2018 WL 507315, at *7, or "further the interests of justice," Local Union No. 38 v. Tripodi, 913 F. Supp. at 294.  Also relevant is the extent to which the responding party has had "adequate opportunity" to "undertake reasonable inquiries to enable it to admit or deny the requests at issue," M & T Mortg. Corp. v. Miller, No. 02 CV 5410, 2008 WL 4163141, at *3 (E.D.N.Y. Sept. 3, 2008), and the "stage of the case," including the stage of discovery, In re New York City Policing During Summer 2020 Demonstrations, No. 20 CV 8924, 2023 WL 167410, at *1 (S.D.N.Y. Jan. 12, 2023).

Rule 36 also provides that "Rule 37(a)(5) applies to an award of expenses" when the requesting party brings a successful motion challenging the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6).  Rule 37(a)(5), in turn, states that "if the motion is granted [in full] . . . the court must . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The Court may deny such an award when "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).  If the motion is granted in part and denied in part,

however, "the court may . . . apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

II.    Discussion

    A.    The City's Responses to the RFAs

Ms. Holloway argues that the City's responses to the RFAs violate Rule 36 of the Federal Rules of Civil Procedure because the City responded by stating that it lacked sufficient knowledge to admit or deny the requests, rather than admitting or denying them.  (Mot. Adm. at 5).  In light of that violation, Ms. Holloway urges this Court to deem the RFAs admitted, arguing that the City's responses to the RFAs are "evasive, deliberately misleading, and false[,] . . . constitut[ing] bad faith."  (Id. at 1; see also id. at 5–7).  This Court concludes that although the City's answers do not comply with the requirements of the Rule, it would be premature at this juncture to deem RFA Nos. 1–4 admitted.  RFA Nos. 5–7, however, are deemed admitted.

The RFAs ask the City to admit the following:

1.  That the City cannot identify John Doe #1;

2.  That the City cannot identify Jane Doe #2 or Jane Doe #3;

3.  That the City cannot identify the NYPD officer or officers that arrested Ms. Holloway at the Protest;

4.  That the City cannot identify any NYPD officer who witnessed Ms. Holloway's arrest;

5.  That Captain Sheppard did not arrest Ms. Holloway at the Protest;

6.  That Captain Sheppard did not witness Ms. Holloway's arrest; and

7.  That Captain Sheppard does not know the identity of the NYPD officer or officers that arrested Ms. Holloway at the Protest.

(See id. at 4–5; Pl.'s Ex. 3 at 3–5).

The City provided an identical answer in response to each of those seven requests: "Deny knowledge or information sufficient to admit or deny and states that it has made a

reasonable inquiry and the information it knows or can readily obtain is insufficient to enable Defendant to admit or deny at this juncture." (Mot. Adm. at 5; see also Pl.'s Ex. 3 at 3–5).

This Court holds that the City's responses are facially deficient. When a party states that it lacks sufficient information to admit or deny a matter, the party is obligated not only to state that it engaged in a "reasonable inquiry," but also to elaborate on the contours of that inquiry and "state 'in detail' why it cannot truthfully admit or deny a request" based on the information gained from that inquiry. U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgmt. LLC, 18 CV 4044, 2020 WL 9549505, at *7 (S.D.N.Y. Nov. 30, 2020) (quoting Fed. R. Civ. P. 36(a)(4)); see also In re New York City Policing During Summer 2020 Demonstrations, 2023 WL 167410, at *2. The City did not do so here. (See Mot. Adm. at 5; Pl.'s Ex. 3 at 3–5). The City's responses not only omit any detail on the nature of the City's inquiry, but they also fail to explain why, in light of that inquiry, the City is unable to admit or deny the RFAs. The City's responses to RFA Nos. 1–7 fail to meet the requirements of Rule 36(a)(4) as a result. The appropriate remedy in light of those deficiencies, however, differs for RFA Nos. 1–4 and RFA Nos. 5–7.

RFA Nos. 1–4: This Court does not adopt Ms. Holloway's position that RFA Nos. 1–4 should be deemed admitted. (See Mot. Adm. at 6–8). In effect, Ms. Holloway argues that the City's inquiry to date indicates that the City cannot and seemingly will never be able to identify the officers involved in the incident. Therefore, she argues, the accurate response to the RFAs is not that the City lacks information sufficient to admit or deny the RFAs but, rather, that all of the RFAs should be admitted. (Id.)

Ms. Holloway's argument makes a good deal of sense. The City has already engaged in an extensive investigation into the identities of the officers involved in Ms. Holloway's arrest, as detailed in the City's opposition to the Motion. This includes searching body cam videos,

interviewing officers identified by the plaintiff, and searching for records that may shed light on the individuals involved.  (City's Resp. Mot. Adm. at 3–4).  Yet, the City has twice represented to this Court that it was unable to identify any of the officers who witnessed or were involved in Ms. Holloway's arrest after significant investigation.  (ECF Nos. 24–25).  Based on the City's fruitless investigation to date, it would be entirely reasonable to conclude that the City should have simply admitted that it cannot identify the officers who were involved in response to RFA Nos. 1–4.

Where, however, it is likely that additional discovery may color a responding party's answer to a request, "[i]t is not the Court's role" to resolve what effectively amounts to a "factual dispute."  Hallmark Licensing LLC v. Dickens Inc., No. 17 CV 2149, 2018 WL 6573435, at *12 (E.D.N.Y. Dec. 13, 2018).  Rather, the appropriate remedy in such circumstances is to order the parties to engage in additional discovery and order the responding party to thereafter amend its responses.  Grant v. Geller, 20 CV 4406, 2023 WL 2697739, at *6 (E.D.N.Y. Mar. 29, 2023) (ordering defendant to amend its response where "[d]efendant . . . failed to provide the [c]ourt with any information to determine if defendant could answer the Fourth Request for Admission after reasonable inquiry" (internal quotations omitted)).

Discovery in this case is ongoing; indeed, there are outstanding disputes (addressed below) about discovery relevant to RFA Nos. 1–4.  Ms. Holloway has demanded documents and information that are likely to aid her, and presumably the City, in identifying potential witnesses and officers involved in the incident.  This includes, inter alia, photographs of the officers present at the Protest as well as the identities of civilians who may have witnessed at least some of the events alleged in the Complaint.  (See First MTC at 1–2; Second MTC at 1).  Ms. Holloway also has yet to sit for a deposition or to depose any of the officers or civilians

identified as potential witnesses, and those depositions may reveal additional information about the identities of the Doe defendants.  (City's Resp. Mot. Adm. at 4–5).

To be perfectly clear, it is not Ms. Holloway's burden at this stage of the litigation to identify the officers who allegedly assaulted her, particularly when the City is uniquely positioned to conduct the relevant investigation and make the appropriate identification.  Wholly separate from its obligations under Rule 36, the City has an "affirmative duty" under Rule 26(g) "to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of liberal discovery."  Singh v. Lintech Elec., Inc., No. 18 CV 5780, 2021 WL 3914478, at *5 (E.D.N.Y. July 20, 2021), report and recommendation adopted, No. 18 CV 5780, 2021 WL 3912416 (E.D.N.Y. Sept. 1, 2021).  It is not the case, as the City seems to suggest, that Ms. Holloway is required to depose every officer conceivably involved in the underlying incident before the City is required to identify the Doe defendants or admit that they are unable to do so.  (See City's Resp. Mot. Adm. at 6 (citing Pasternak v. Kim, No. 10 CV 5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011))).  Given, however, that additional discovery seems likely to shed further light on the identities of the relevant officers, it would be counterproductive and ultimately contrary to the fair assessment of the merits of this case to deem RFA Nos. 1–4 admitted at this time.

Following the completion of the additional discovery ordered herein, the City would do well to consider carefully the nature of its revised responses.  As noted above, the entirety of the record suggests that the City should have admitted most if not all of the requests and not maintained that it lacks sufficient information to do so.  Although the Court declines at this time to reach that conclusion with respect to RFA Nos. 1–4,  the City is cautioned that it may not perpetually hide behind the assertion that it lacks sufficient information to admit or deny the

RFAs.  If future discovery fails to identify the officers involved, there will be no other conclusion than that the City simply does not know and can never determine which officers were involved in the underlying incident.

The parties are ORDERED to engage in additional fact discovery between now and **November 30, 2023**.  During this time, the City is Ordered to depose Ms. Holloway and to provide the discovery as directed <u>infra</u>.  Ms. Holloway shall depose Captain Sheppard, as well as any other officers or potential eyewitnesses that she so chooses.  Thereafter, the City shall serve its amended responses to RFA Nos. 1–4 by **December 30, 2023**.  The amended responses must include additional detail on the nature of the City's investigation and, should the City maintain its current position, an explanation of why they are unable to admit or deny the requests in light of that investigation.

<u>RFA Nos. 5–7</u>: Unlike with RFA Nos 1–4, the record indicates that additional discovery is unlikely to lead to any conclusion other than that the City should have admitted RFA Nos. 5–7.  Those RFAs seek information solely pertaining to Captain Sheppard's involvement in the incident—whether he arrested Ms. Holloway, whether he witnessed her arrest, and whether he knows the identities of the officers who arrested her.  (Mot. Adm. at 4–5).  Captain Sheppard himself has told the City that he has no knowledge of the events in question (City Resp. Mot. Adm. at 6; ECF No. 24 at 1), and he denied knowledge of the majority of relevant facts in his Answer to the First Amended Complaint.  (ECF No. 46 ¶¶ 33–62).

The City does not appear to dispute that the statement Captain Sheppard already provided—a statement that the City itself conveyed to this Court—is accurate and provides sufficient information to admit RFA Nos. 5–7.  Rather, the City points out that Ms. Holloway has not yet deposed Captain Sheppard and asserts that Ms. Holloway is thus improperly attempting

to use the RFAs as a means of "circumvent[ing] the rules of discovery" by not "ask[ing] Captain Sheppard to make such an admission at a deposition." (City Resp. Mot. Adm. at 6). The City failed to raise that objection in its responses to the RFAs, however, and in any event, "[o]bjections that plaintiff should obtain the information by independent discovery and investigation or that the matter is already within plaintiff's knowledge are . . . [generally] misplaced" in response to requests for admission. Grant v. Geller, 2023 WL 2697739, at *6 (omission in original) (quoting Diederich v. Department of Army, 132 F.R.D. 614, 617 (S.D.N.Y. 1990)).

In light of the above, this Court deems RFA Nos. 5–7 admitted pursuant to Rule 36(a)(6) of the Federal Rules of Civil Procedure. Should Ms. Holloway or the City later determine that the assertions in any of those requests are not in fact accurate, they may move for an amendment under Rule 36(b).

B.    Sanctions

Ms. Holloway seeks monetary sanctions for the City's failure to respond properly to the RFAs. (Mot. Adm. at 8). The Federal Rules explicitly provide for "an award of expenses" incurred in making a successful motion concerning requests for admission. Fed. R. Civ. P. 36(a)(6), 37(a)(5)(A). However, because the Court lacks sufficient information to assess the validity of the City's assertion that it cannot admit or deny the matters in RFA Nos. 1–4, this Court defers judgment on the motion for sanctions. Ms. Holloway may re-file her motion for sanctions following completion of the discovery Ordered herein.[7]

---

[7] To the extent Ms. Holloway believes that the City or its counsel have in some way acted improperly in representing that the City cannot identify the officers involved in the arrest, she is free to make a motion to that effect. See Fed. R. Civ. P. 26(g)(3). Likewise, should the City continue to maintain that it can neither admit nor deny the RFAs, and should Ms. Holloway later prove the truth of the matters requested, she may seek appropriate sanctions at that time. See Fed. R. Civ. P. 37(c)(2). A Rule 36(a)(6) motion made in the midst of discovery is not an appropriate vehicle for doing so, however, and these issues are not presently before this Court. Relatedly, Ms. Holloway asks this Court to hold that "Defendants [are] not . . . permitted to put on any evidence in their defense

<u>MOTIONS TO COMPEL</u>

On February 21, 2023, Ms. Holloway filed her First Motion to Compel, pursuant to Federal Rules of Civil Procedure 33, 34, and 37, seeking to compel the City to answer interrogatories and produce documents responsive to her Second Discovery Requests.  (First MTC at 1).  On April 13, 2023, Ms. Holloway filed her Second Motion to Compel, pursuant to Federal Rules of Civil Procedure 34 and 37, seeking to compel the City to produce records that may identify key eyewitnesses in response to her Third Document Requests.  (Second MTC at 1).  For the reasons detailed below, both motions to compel are granted.

I.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 26(b) governs the scope of discovery in federal cases. Rule 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevancy under Rule 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in th[e] case."  <u>Giacchetto v. Patchogue-Medford Union Free Sch. Dist.</u>, 293 F.R.D. 112, 114 (E.D.N.Y. May 6, 2013) (alteration in original) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)).  While Rule 26(b) was amended in 2015 to move the proportionality language to the provision defining the scope of discovery, "[t]he 2015 amendment[ ] . . . did not establish a new limit on discovery."  <u>ValveTech, Inc. v. Aerojet Rocketdyne, Inc.</u>, No. 17 CV 6788, 2021 WL 630910, at *2 (W.D.N.Y. Feb. 18, 2021); <u>see also</u> <u>Robertson v. People Mag.</u>, No. 14 CV 6759, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) (explaining that the

---

concerning the arresting officers' actions or reasons for their actions."  (Mot. Adm. at 7; <u>see also</u> <u>id.</u> at 2 (asking the Court to "order that Defendant cannot put on any evidence about the conduct of the Doe Officers or the reason for their conduct")).  Although Rule 36 does not provide for any such relief, Ms. Holloway may seek sanctions to that effect in the event that the City fails to comply with this Order.  <u>See</u> Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii).

amendment "serves to exhort judges to exercise their preexisting control over discovery more exactly"); Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (explaining that "[r]estoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality"). Accordingly, Rule 26 as amended "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." Carl v. Edwards, No. 16 CV 3863, 2017 WL 4271443, at *2 (E.D.N.Y. Sept. 25, 2017) (quoting Vaigasi v. Solow Mgmt. Corp., No. 11 CV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016)).

Nevertheless, while the scope of discovery is "broad," it is not "limitless." Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). The party seeking discovery must show that it is not engaging in "merely a fishing expedition." Carl v. Edwards, 2017 WL 4271443, at *3 (quoting Barbara v. MarineMax, Inc., No. 12 CV 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)). The Rule requires courts to limit the extent of discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

II.   Plaintiff's First Motion to Compel

Ms. Holloway propounded her Second Discovery Requests and Interrogatories on December 1, 2022, seeking information related to Captain Sheppard, the Doe defendants, and officer Danielle Moses ("Officer Moses"), who signed Ms. Holloway's summons. Officer Moses is an officer whom the City identified as a potential witness. (First MTC at 1). The City responded to those requests on January 23, 2023, but refused to produce any documents relating to the two officers noted above or to answer "basic interrogatories." (Id. at 1–2). Ms. Holloway argues that following a meet and confer and a conference before this Court, the City maintained

15

its objections to producing: (1) photographs of NYPD officers deployed at the Protest; (2) briefings, commands, or instructions concerning the Protest given or received by Officer Moses or Captain Sheppard; and (3) complaints against Captain Sheppard stemming from the Protest or similar protests that occurred between May and December 2020.  (Id. at 2).  Ms. Holloway asserts that the City also refused to provide "a summary of the information known to the officers who have knowledge of Plaintiff's arrest or who gave Plaintiff an order at the Protest" or "the reason why Defendant's agent declined to prosecute Plaintiff."  (Id.)

Ms. Holloway asks this Court to compel the City to produce the aforementioned documents and information.  (Id.)  In response, the City explains that they served their initial responses on January 23, 2023, and subsequently indicated that they would provide Patrol Borough Brooklyn North Incident Command Post Deployment Sheets, Detail Roster/Assignment Sheets and the disciplinary histories of Sheppard and Moses. (City's Resp. First MTC[8] at 1–2).  The City further contends that Ms. Holloway's requests are "clearly overbroad or irrelevant" and that her request for further supplemental responses should be denied. (Id. at 2).

A.    Request No. 15

Ms. Holloway seeks the production of "all documents relating to any briefing, command, or instruction [Officer Moses] or [Captain Sheppard] gave to or received from any NYPD officer concerning the Protest."  (First MTC at 3).  The City raised several objections to this request, including that it is "unduly burdensome" and not proportional to the needs of the case, that it is "vague and ambiguous," and that it is "overbroad as it encompasses multiple categories of documents and materials, including those that are not reasonably limited in scope to the events and claims that are [the] subject of this litigation."  (Id.)  In light of those boilerplate objections,

---

[8] Citations to "City's Resp. First MTC" refer to the City's letter in response to plaintiff's First Motion to Compel, dated March 14, 2023. (ECF No. 32).

the City declined to provide any further response to the request.  (Id.)  The City reiterates these same objections in opposing the First Motion to Compel, asserting that the request is overbroad and burdensome in that "it seeks 'all documents' and is not limited in scope to the events and claims that are the subject of this litigation."  (City's Resp. First MTC at 3).

The City's boilerplate objections and stated refusal to produce a single document in response to Request No. 15 are in violation of the Federal Rules, particularly in light of the broad and liberal construction given to the Rules concerning discovery.  See Singh v. Lintech Elec., Inc., 2021 WL 3914478, at *5; Leibovitz v. City of New York, No. 15 CV 546, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017).  Contrary to the City's overbreadth objection, the request is specifically limited to briefings, commands and instructions given with respect to the specific protest that Ms. Holloway was involved in at the time she was arrested on June 3, 2020.  Ms. Holloway is clearly entitled to receive any documents reflecting briefings or instructions given to officers about the Protest and steps to be taken with respect thereto, including when and whether arrests would be authorized, when and whether orders of dispersal were to be given, and what procedures were to be followed in the event of an arrest.  This information is routinely provided in cases such as this and is particularly critical where, as here, defendants claim a total inability to identify anyone with knowledge who could be deposed on these issues.  Similarly, to the extent that either Officer Moses or Captain Sheppard prepared any documents relating to commands or instructions given, those records should be provided; they are not privileged and defendants' objections are without merit.

The City is ORDERED to produce the documents noted above.

B.      Request No. 16

Ms. Holloway requests "a roster or list, including photographs, of each and every NYPD officer, including commanding officers ('white shirts'), that was deployed at the Protest."  (First

MTC at 4).  Once again, the City raised a litany of boilerplate objections, including that the request is "compound" because it seeks multiple types of documents in one request; that it is "overbroad," "unduly burdensome and not proportional to the needs of the case," and "vague and ambiguous" as to what plaintiff means by a "roster or list"; and that it seeks materials that are irrelevant to the claims and defenses in the case.  (Id. at 4–5).  As for the photographs, the City claims privacy and security concerns, and argues that the photographs are protected by the law enforcement and/or official information privilege.  (Id. at 5).  The City therefore refused to provide any documents in its written responses.  (Id.)

To the extent that the City interposed the same boilerplate objections as they did with respect to Request No. 15, the Court finds them to be in violation of the Federal Rules.  Ms. Holloway's request for a list or roster and photographs of individual NYPD officers assigned to cover the Protest at Cadman Plaza could not be clearer; to object on grounds that the request is "vague and ambiguous" smacks of bad faith.  If there was no list of officers detailed or assigned to cover the Protest—something this Court seriously doubts—the City should have stated as much.  Indeed, in opposing Ms. Holloway's motion to compel, the City now states that it produced the Patrol Borough Brooklyn North Incident Command Post Deployment Sheets and Detail Roster/Assignment Sheets with its supplemental response on February 7, 2023.  (City's Resp. First MTC at 3).  The production of these documents, especially the "Roster/Assignment Sheets," demonstrates the frivolity of the City's objections—particularly, the objection that the request was "vague and ambiguous" as to what plaintiff meant by a "roster or list."

According to the City, the deployment and roster sheets show that over 100 officers were deployed to the Protest. (Id.)  The City contends, however, that "to provide photographs of over 100 officers so plaintiff can cherry pick which officers she claims allegedly assaulted her would

18

be unduly burdensome and not proportional to the needs of this case." (<u>Id.</u>)  When a party objects

on the grounds of burden, they "must go beyond the familiar litany that requests are burdensome

. . . and submit affidavits or other evidence revealing the nature of the burden."  <u>Schiavone v.</u>

<u>Northeast Utils. Serv. Co.</u>, No. 08 CV 429, 2010 WL 382537, at *1 (D. Conn. Jan. 27, 2010).

Although the City raises a burden objection, it does not explain with any particularity why

producing photographs of officers, which the City presumably can access with ease, poses any

meaningful burden.  The City's burden objection is therefore overruled.

     While the City makes the conclusory assertion that Request No. 16 seeks discovery that

is "not proportional to the needs of the case" (City's Resp. First MTC at 3), it ignores the fact

that identifying the officers involved is critical to Ms. Holloway's ability to prove her case.  The

Court has issued several orders and granted several extensions to allow the City to identify the

relevant officers, all to no avail.  The production of photographs of officers present at the Protest

appears to be the last resort in plaintiff's efforts to identify the officers who assaulted and abused

her.  Unless the City is willing to concede that some unnamed officer unlawfully arrested,

assaulted, and injured Ms. Holloway, she is undoubtedly entitled to the photographs she seeks.

<u>See</u> <u>Franks v. City of New York</u>, 13 CV 623, 2013 WL 6002946, at *1 (E.D.N.Y. Nov. 12, 2013)

(collecting cases and noting that "[s]everal courts in this Circuit have ordered the production of

officers' photographs in civil rights cases, recognizing that this is a reasonable and efficient

means of identifying relevant officers").

     The City also argues that producing the photographs implicates security and privacy

concerns.  (City's Resp. First MTC at 3).  The City offers no explanation as to why that is so.

These are not undercover officers engaged in an undercover operation; they are visible to the

public as they carry out their duties.  Moreover, the confidentiality order already in place

adequately accounts for any privacy or security concerns that the City may have.  (See Pl.'s Reply Supp. First MTC[9] at 2).  The City's objections based on supposed law enforcement privilege and privacy concerns are clearly without merit in this context and are outweighed by Ms. Holloway's need to identify the responsible officers.[10]

Accordingly, the City is ORDERED to produce photographs of the officers who were present at the time of the Protest in response to Request No. 16.

C.    Request Nos. 17 and 18

Ms. Holloway requests the production of all "Complaints[11] . . . made against [Captain Sheppard] relating to a protest, assembly, or demonstration that occurred on or between May 1, 2020, and December 31, 2020."  (First MTC. at 5).  Relatedly, Ms. Holloway requests "all Notice of Personal Injury Claim forms" filed in connection with any protest, assembly or demonstration between May 1, 2020 and December 31, 2020, that mention Captain Sheppard. (Id. at 6).  After raising the same boilerplate objections of relevance, burden, and proportionality, the City also objected to these two requests on the grounds that they "seek[] information that is publicly available and equally available to both parties."  (Id.)  Yet the City also asserts that the requests are objectionable because they implicate the privacy of non-parties to the action or reflect ongoing investigations protected by the law enforcement and/or deliberative process privilege.  (Id.)[12]

---

[9] Citations to "Pl.'s Reply Supp. First MTC" refer to plaintiff's reply letter in support of her First Motion to Compel, dated March 21, 2023. (ECF No. 34).

[10] To the extent that the City has raised privilege objections to any of these Requests, those objections have been waived by its failure to produce a privilege log as required by the Federal Rules.  Fed. R. Civ. P. 26(b)(5)(A).

[11] Plaintiff defines "Complaints" as "any allegation made to the Civilian Complaint Review Board, the Internal Affairs Bureau of the NYPD, command complaint, the Office of the Inspector General, any individual precinct or NYPD supervisor, the New York City Commission to Combat Police Corruption, or any court or prosecutor's office whether substantiated or not."  (First MTC at 5 n.1).

[12] The City's suggestion that complaints filed against an officer and/or injury claim forms implicate the deliberative process privilege is completely frivolous.  As explained in more detail below, that privilege applies only to inter- or intra-agency documents of a deliberative nature that "bear on the formulation or exercise of policy-

The City cannot claim that the documents are publicly available while simultaneously claiming that they are protected from production by a privilege or the existence of an ongoing investigation.  Moreover, any privilege that may have been asserted has been waived by defendants' failure to provide a privilege log.  (See n.10 supra).  More importantly, the City's refusal to supply any documents after having provided such a contradictory response suggests bad faith on the part of the City, which appears to have included any and all possible objections it can conjure up in an effort to avoid providing discovery in this case.

Now, in response to the First MTC, the City appears to have abandoned its original objections and instead contends that this is a "fishing expedition."  (City's Resp. First MTC at 3).  The City focuses on the purported overbreadth of the requests, claiming that they seek information that is not "germane to this case, namely, excessive force and false arrest."  (Id.)  In her reply letter, Ms. Holloway contends that complaints involving misconduct are relevant "either because of the similarity of the accusations to plaintiff's allegations [] of wrongdoing or because they may influence an assessment of the credibility of the [] officers." (Pl.'s Reply Supp. First MTC at 7 (omissions in original) (quoting Bradley v. City of New York, No. 04 CV 8411, 2005 WL 2508253, at *2 (S.D.N.Y. Oct. 3, 2005))).  Plaintiff also contends that the City's overbreadth objection to the production of claim notices that "mention" Captain Sheppard is misplaced since the notice of claim form does not allow complainants to name specific individual officers as respondents and only allows officer information to be included in the narrative section of the notice.  (Id.).  In other words, Ms. Holloway cannot seek a narrower set of claim forms pertaining to Captain Sheppard without asking the City to consider whether the substance of the claim is in some way relevant.  It is not necessary for Ms. Holloway to do so;

---

oriented judgment."  Shinnecock Indian Nation v. Kempthorne, 652 F. Supp. 2d 345, 356–57 (E.D.N.Y. 2009). Complaints and injury claim forms filed by third parties do not satisfy a single element of that standard.

"virtually all" misconduct records are relevant in police misconduct cases, <u>Walls v. City of New York</u>, 502 F. Supp.3d 686, 694 (E.D.N.Y. 2020), and the City has not articulated any competent basis for refusing to produce the records.

The Court therefore ORDERS the City to produce the requested complaints and notice of claim forms.

D.    Interrogatory Nos. 9 and 11

Interrogatory Nos. 9 and 11 ask that all NYPD officers who participated in, assisted, witnessed, or were involved in Ms. Holloway's arrest and/or who gave her an order or command during the Protest summarize their knowledge of the events and the content or circumstances under which they gave orders or commands to Ms. Holloway.  (First. MTC at 8).  The City originally objected to both interrogatories on the grounds that they were "vague and ambiguous" as to what is meant by "summarize the nature," and that depositions are a better way of obtaining the requested information.  (<u>Id.</u>)

Neither of the City's original objections are valid.  As Ms. Holloway points out, an interrogatory "asking to set forth a summary to inform of the important facts known to or observed by each of the witnesses" is a "standard interrogatory," <u>see</u> <u>Hosch v. United Bank, Inc.</u>, No. 09 CV 1490, 2012 WL 486478, at *4 (D.S.C. 2012), and courts routinely order parties to provide brief summaries, <u>see</u> <u>Pateley Assocs. LLC v. Pitney Bowes, Inc.</u>, No. 08 CV 1607, 2009 WL 10689217, *3 n.12 (D. Conn. Aug. 31, 2009).  Moreover, Ms. Holloway cannot be expected to identify and then depose each and every potential officer who witnessed the events at issue when the City itself has failed to identify a single officer who witnessed the events at issue apart from Officer Moses (whose involvement began after Ms. Holloway was transported to BCB).  It is far easier and more efficient for the City to provide plaintiff with the summarized information.

Now, in response to the First Motion to Compel, the City contends that the requests are overbroad because "they are not limited by subject matter as to what type of knowledge the officer had, and what type of content to which the plaintiff refers." (City's Resp. First MTC at 4). This objection is nonsensical and without merit. The requests specifically ask for a summary of the relevant officers' knowledge of "the events" at issue, meaning the Protest and Ms. Holloway's arrest and subsequent treatment.

The City is therefore ORDERED to respond to Interrogatory Nos. 9 and 11. If the City is simply unable to identify a single witness to the events described in the Complaint after undertaking a good faith investigation, the City should revise its responses to state as much.

E.    <u>Interrogatory No. 14</u>

Interrogatory No. 14 asks the City to state the reasons why the decision was made to decline to prosecute or dismiss the summons issued to Ms. Holloway. (First MTC at 9). In its written response, the City objected on the grounds that the request "implicates attorney work product and/or any other applicable privileges." (<u>Id.</u>) The City also objected on the grounds that the interrogatory seeks information not in the City's custody or control. (<u>Id.</u>) In response to the First Motion to Compel, the City indicated that it had received the Certificate of Disposition, indicating that Ms. Holloway's summons was dismissed "in the interest of justice pursuant to CPL 170.40." (City's Resp. First MTC at 4). The City now indicates that it will produce this Certificate. (<u>Id.</u>)

Instead of refusing to respond to this interrogatory in its entirety, the City should have indicated that they were searching for responsive documents and would amend its responses in due course. Nonetheless, Ms. Holloway continues to seek information as to *why* the summons was dismissed in the interest of justice. (Pl.'s Reply Supp. First MTC at 3). To the extent that the City seeks to protect that information on grounds of deliberative process privilege (<u>see</u> City's

Resp. First MTC at 4), Ms. Holloway contends that defendants did not object to the interrogatory on this specific ground and hence, the objection is waived. (Pl.'s Reply Supp. First MTC at 3 (citing Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 111 (W.D.N.Y. 2000))).  This Court agrees.

"The deliberative process privilege protects from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Shinnecock Indian Nation v. Kempthorne, 652 F. Supp. 2d at 356 (quoting Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002).  The privilege does not protect against the disclosure of "[p]urely factual material not reflecting [an] agency's deliberative process," nor does it shield deliberative records that do not "bear on the formulation or exercise of policy-oriented judgment." Id. at 357.

The City's objection was "on the grounds that it implicates the attorney work product or and/or any other applicable privilege." (First MTC at 9).  This is not the proper way to assert the deliberative process privilege; the head of the agency claiming the privilege must consider the material and lodge the objection.  See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009).  Here, the agency making the determination to dismiss the summons was the District Attorney's Office; there has been no showing that the privilege is being asserted after the performance of the requisite review.  "The assertion of the privilege by an attorney is [] improper," in the absence of a review by the head of the agency.  Id.

Moreover, even if the City had properly asserted the privilege, courts in this District have previously held that "[a] prosecutor's decision to indict or not prosecute someone is not a policy decision," and only those "records that bear on the formulation or exercise of policy-oriented judgment" are protected by the deliberative process privilege.  Lawrence v. Suffolk County, No.

19 CV 2887, 2022 WL 855380, at *10 (E.D.N.Y. Mar. 23, 2022) (quoting Tigue v. U.S. Dep't of Justice, 312 F.3d at 76).  This Court therefore concludes that the deliberative process privilege, even had the City properly invoked it, would not apply to the information Ms. Holloway seeks in Interrogatory No. 14.

The City is ORDERED to respond to Interrogatory No. 14.[13]

III.    Plaintiff's Second Motion to Compel

Ms. Holloway's Second Motion to Compel seeks to compel the City to produce several categories of documents in response to Request Nos. 32, 33, and 34 of her Third Document Requests.  (Second MTC at 2).  Specifically, Ms. Holloway requested that the City produce (1) "all summonses issued by NYPD officer Danielle Moses . . . on June 3, 2020, or June 4, 2020, that relate to the Protest, including, but not limited to, the summonses numbered 4441958129, 4441958132, 4441958146" (Request No. 32) (id.);[14] (2) all summonses issued at BCB[15] within one hour before and after Ms. Holloway's summons was issued and that relate to the Protest (Request No. 33) (id.); and (3) all summonses issued at BCB to any persons transported with Ms. Holloway from the Protest (Request No. 34) (id.).

---

[13] The City has not substantiated its assertion that the work product privilege applies to documents pertaining to the reason that Ms. Holloway's summons was dismissed in the interest of justice.  Nor did the City provide any sort of privilege log in connection with its assertion of the work product privilege.  The City has thus waived its objection to Interrogatory No. 14 on the basis of that privilege.  See Fed. R. Civ. P. 26(b)(5)(A); Local Civil Rule 26.2(a)–(b).

[14] Ms. Holloway has since withdrawn her motion to compel with respect to request No. 32, as the City subsequently informed her that all summonses issued by Officer Moses have already been provided.  (Pl.'s First Reply Supp. Second MTC (ECF No. 38) at 1 n.1).

[15] Ms. Holloway mistakenly referred to the 81st Precinct, rather than Brooklyn Central Booking, in the text of her requests.  (See Second MTC at 2; Pl.'s First Reply Supp. Second MTC at 2 n.2).  To the extent that the City objected to Request Nos. 33 and 34 on this ground, the City should have informed plaintiff of her mistake in their initial responses to the requests, or at the very least during the meet and confer that followed, rather than raising a blanket objection to the requests on that ground.  See Fed. R. Civ. P. 34(b)(2)(C); Local Civil Rule 37.3.  Instead, the City informed plaintiff "for the first time" in their response to the instant motion to compel that she was mistaken as to the location.  (Pl.'s First Reply Supp. Second MTC at 2 n.2).  At this point, rather than require plaintiff to re-serve the corrected requests, the Court will construe the requests to refer to BCB and not the 81st Precinct.

Ms. Holloway maintains that the documents demanded—all of which are aimed at uncovering the identities of approximately eight individuals whom Ms. Holloway insists were arrested, transferred to BCB, and booked alongside her—are of vital importance to her ability to identify "key potential eyewitnesses." (Id. at 1). She also asserts that while the City provided records identifying three of the potential eyewitnesses, it now object to producing records concerning the other five. (Id.)

In its written responses, the City objected that Request Nos. 32–34 were "overbroad" in seeking "all summonses," "not relevant," "vague and ambiguous" to the extent they refer to "the Protest," and unduly burdensome and not proportionate to the needs of the case in that the burden and expense "outweighs any likely benefit to Plaintiff." (Id. at 2–3). The City also objected on the grounds that the requests "implicate[] the security and privacy issues of individuals who are not parties to this litigation." (Id.) The majority of the City's objections are little more than meritless boilerplate that do not warrant further treatment here. The Court will, however, specifically address two of the City's objections: burden and proportionality and privacy.

A.    Burden and Proportionality

The City raises several arguments that, in effect, amount to an argument that the burden required to obtain the documents Ms. Holloway seeks outweighs whatever value they may provide Ms. Holloway in litigating this case. With respect to Request No. 33, the City contends that providing all summonses issued within an hour of Ms. Holloway's summons would include protesters who were nowhere near the location of the alleged incident, and therefore likely would not help identify witnesses. (City's Resp. Second MTC[16] at 4). With respect to Request No. 34,

---

[16] Citations to "City's Resp. Second MTC" refer to the City's letter in response to plaintiff's Second Motion to Compel, dated April 24, 2023. (ECF No. 37).

the City contends that to the extent this request asks for the summonses issued to others on Ms.

Holloway's bus, this would require the NYPD to identify the bus she was on and then attempt to

identify the individuals on that bus, even though they may not have been on the bus when the

incident allegedly occurred.  (Id.)  Since Ms. Holloway has not indicated that any of the people

shown on the video footage actually witnessed the alleged incident, the City argues that

obtaining their summonses "would not serve any purpose."  (Id. at 4–5).  Finally, the City asserts

that because Ms. Holloway has already identified one such potential witness, and has received

the three protest-related summonses from the City, Ms. Holloway "already has the identities of

potential eyewitnesses . . . [and] there is no need to produce the documents [she] now seeks."

(Id. at 5).

There is no question that the identities of any potential eyewitnesses to the alleged

incident are not only relevant but critical in this case, particularly in light of the City's apparent

inability or unwillingness to identify any responsible police officers.  The City's arguments about

the small likelihood that the documents requested will yield useful information are misguided.

In her first reply letter, Ms. Holloway represents that she specifically recalls that several people

were already on the bus when she was placed on it, after having had her head slammed by the

alleged Captain.  (Pl.'s First Reply Supp. Second MTC at 2).  Moreover, Ms. Holloway asserts

that because the body cam footage shows at least nine people on the bus before it departed from

the Protest, she is reasonably certain that there were about eight people on the bus at the time of

the alleged assault.  (Id.)  Indeed, in her second reply letter, Ms. Holloway indicates that one of

the witnesses disclosed by the City advised plaintiff's counsel that he was on the bus and

witnessed an NYPD officer slam Ms. Holloway's head against the bus.  (Pl.'s Second Reply Supp. Second MTC[17] at 1).

The City's complaints about the burden in identifying the bus that Ms. Holloway was on is likewise without merit.  The City has already identified the body cam footage that shows Ms. Holloway and the potential witnesses on the bus.  (See Pl.'s First Reply Supp. Second MTC at 3).  The City need only match the pictures of the individuals on the bus with the booking photos.  (Id.)  Moreover, to the extent that the City is suggesting that producing the information of three of the eight people on the bus is sufficient and that further production of potential eyewitnesses would be cumulative, plaintiff correctly argues that at this stage of the litigation, she is entitled to the identities of all potential eyewitnesses in order to determine what they saw.  (Id. at 4).  This is particularly true given that the City has been unable or unwilling to identify a single officer involved in the incident and continues to dispute that the one officer she identified was actually involved.

Finally, it is no objection that the individuals on the bus "may not have any knowledge of the alleged incident."  (City's Resp. Second MTC at 4).  The entire purpose of providing Ms. Holloway with the names of those individuals is to permit her to determine whether or not that is the case.  Moreover, even if they did not witness Ms. Holloway's arrest itself, these individuals may be able to assist Ms. Holloway in identifying officers involved in arresting protesters on the night of the incident, including by identifying relevant officers in the photo array once the City produces it.

In light of the above, the City's objections on burden and proportionality grounds are overruled.

---

[17] Citations to "Pl.'s Second Reply Supp. Second MTC" refer to plaintiff's second reply letter filed in support of her Second Motion to Compel, dated May 2, 2023.  (ECF No. 39).

B.    Privacy and Security

The City asserts that the further production of summons in response to Request Nos. 33 and 34 would constitute an "unwarranted invasion of [the] privacy interests of third-parties" (id. at 5), and that the requests "implicate the provisions of N.Y.C.P.L. Section 160.50/160.55 as to individuals other than plaintiff" (Second MTC at 4–5).  In response to Ms. Holloway's argument that the City has already produced three such summons without any confidential designation, the City asserts that it did so inadvertently and requests that the Court deem those documents confidential.  (ECF No. 35-1 at 5).  Ms. Holloway argues that the City can adequately protect the privacy interests of the recipients of the summonses by redacting their sensitive personal identifying information, as the City did with the three summonses that it already produced. (Second MTC at 6).  Ms. Holloway also argues that the unsealing statute cited by the City has "repeatedly 'been rejected as a basis to block discovery in an action where plaintiffs are asserting federal claims.'"  (Pl.'s First Reply Supp. Second MTC at 4 (quoting Schomburg v. New York City Police Dep't, 298 F.R.D. 138, 141 (S.D.N.Y. 2014))).

This Court agrees with Ms. Holloway.  There are ample methods by which the City may produce the requested summonses without unduly compromising the security or privacy of the individuals who received those summonses.  The Court therefore ORDERS the City to: (1) review the body cam footage of the bus and provide Ms. Holloway with the summonses issued to the individuals on the bus and (2) provide the summonses issued at Brooklyn Central Booking an hour before and an hour after Ms. Holloway's booking.  When producing the summonses, the City shall designate them as confidential and redact all sensitive information not necessary for plaintiff's ability to contact the recipient of the summons, including social security numbers and the specific reason for which the summons was issued.

Pursuant to the confidentiality order in place in this action, the Court hereby deems confidential the three summonses that the City already produced.

IV.    <u>Discovery Abuses</u>

Finally, the Court wishes to briefly address the City's behavior in the discovery process to date.  A responding party cannot object to a request or interrogatory on privilege grounds without specifying which privilege applies and the documents to which it applies.  <u>See</u> <u>Mamakos v. United Airlines, Inc.</u>, No. 14 CV 7294, 2018 WL 4861392 (E.D.N.Y. Sept. 28, 2018). Likewise, it is no longer permissible to interpose "boilerplate generalized objections," such as stating that a demand is "vague, ambiguous, overly broad, unduly burdensome, seeks material that is privileged and proprietary in nature and not reasonably calculated to lead to the discovery of admissible evidence . . . without setting forth, with particularity, why and how the documents sought are irrelevant or overbroad."  <u>Id.</u> (citing <u>Jacoby v. Hartford Life & Acc. Ins. Co.</u>, 254 F.R.D. 477 (S.D.N.Y. 2009)).

As a frequent litigant in this and other federal courts, the City is undoubtedly aware of these standards.  Yet the City failed to meet them when responding to virtually all of the document requests and interrogatories addressed above.  The City is admonished that if it continues to interpose bad-faith objections (<u>e.g.</u>, objecting on the basis of "any other applicable privileges" (First MTC at 9)), respond to discovery requests with meaningless boilerplate objections, or generally fail to engage in discovery in a cooperative manner, this Court will impose appropriate sanctions, including but not limited to sanctions under Rule 37(b)(2)(A) and (C) of the Federal Rules of Civil Procedure.

CONCLUSION

For the reasons set forth above:  Plaintiff's Motion for Admissions is granted in part and denied in part. The Court defers decision on plaintiff's request for sanctions.  Plaintiff's Motions to Compel are granted as set out above.

The parties are ORDERED to engage in additional fact discovery.  Specifically, the City shall produce the documents and information Ordered herein by **October 27, 2023**.  Between now and **November 30, 2023**, the parties shall conduct depositions, including the City's deposition of Ms. Holloway and Ms. Holloway's deposition of Captain Sheppard, as well as any other officers or potential eyewitnesses.  The City shall serve its amended responses to RFA Nos. 1–4 by **December 30, 2023**.  By **January 19, 2024**, the parties shall file a letter with this Court confirming that fact discovery is complete or otherwise detailing any remaining discovery disputes.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        September 28, 2023

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

31