UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

 ALEXANDRIA HOLLOWAY,

                              Plaintiff,

              -against-                                **MEMORANDUM AND ORDER**
                                                       21 CV 3858 (AMD)(CLP)

THE CITY OF NEW YORK, *et al.,*

                              Defendant.
---------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On July 9, 2021, Alexandria Holloway ("Ms. Holloway" or "plaintiff") commenced this action against the City of New York (the "City") and John and Jane Does 1 through 50 (the "Doe defendants"), bringing claims under both 42 U.S.C. § 1983 and New York State Law for injuries she allegedly suffered when she was unlawfully arrested during a protest. (Compl.[1]). On May 2, 2023, plaintiff filed an Amended Complaint, naming as additional defendants the New York City Police Department (the "NYPD"), and Captain Tarik Sheppard ("Captain Sheppard") in his individual capacity. (FAC[2]).

Currently pending before this Court are plaintiff's Motions for Attorney's Fees (ECF Nos. 52, 63), pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure, and plaintiff's Motion for Sanctions (ECF No. 54), including a request for an Order of preclusion, pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, based on defendants' alleged failure to comply with this Court's Order of September 28, 2023.[3]

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed July 9, 2021. (ECF No. 1).
[2] Citations to "FAC" refer to plaintiff's First Amended Complaint, filed on consent on May 2, 2023. (ECF No. 40).
[3] On March 28, 2024, defendants filed a motion to compel the production of employment records for plaintiff's business, Allie Holloway, LLC. (ECF No. 67). That motion is currently under advisement and will be addressed in a separate Order.

For the reasons set forth below, the Court grants plaintiff's Motions for Attorney's Fees and denies plaintiff's Motion for Sanctions related to defendants' alleged noncompliance with this Court's prior Order.

<u>FACTUAL BACKGROUND</u>

This case is one of many resulting from the mass protests that followed in the wake of the police killings of George Floyd and Breonna Taylor in the summer of 2020.  (<u>See</u> FAC ¶¶ 1, 12). Over the course of several months, people in New York City and elsewhere engaged in largely peaceful protests against police violence and brutality, and the racially disparate manner in which it is frequently carried out in the United States.  (<u>Id.</u>)

Ms. Holloway alleges that in order to "suppress" those protests and "terrorize" those who took part in them, the NYPD responded with excessive force and, at times, outright violence. (<u>Id.</u> ¶¶ 1, 63).  According to Ms. Holloway, she was "one of many New Yorkers who was violently attacked and unlawfully arrested by the NYPD" while "peacefully protesting in Brooklyn."  (<u>Id.</u> ¶ 2).  Specifically, she alleges that on the night of June 3, 2020, she participated in a protest and march that began at the Barclays Center and ended at Cadman Plaza West and Tillary Street in Brooklyn (the "Protest").  (<u>Id.</u> ¶ 11).  After the Protest reached Cadman Plaza— apparently after the 8:00 p.m. curfew had gone into effect—NYPD officers refused to allow the Protest to proceed onto the Brooklyn Bridge towards Manhattan.  (<u>Id.</u> ¶¶ 13-16).

At approximately 9:00 p.m., NYPD officers[4] allegedly surrounded a group of protestors who remained gathered in Cadman Plaza and, without provocation, "charge[d] at the protesters, . . . shoving them as they attempted to flee, and beating them with batons."  (<u>Id.</u> ¶¶ 17-20).  The

---

[4] The attack against other protestors was allegedly carried out by Doe defendants #5-50.  (FAC ¶ 19 n.1).

officers then began to "indiscriminately arrest[]" the protestors without "cause or justification" and without any "violence [or] threat of violence" from the protestors. (Id. ¶¶ 23-28, 35, 43-44).

For her part, Ms. Holloway was pushed to the ground by an unknown NYPD officer ("John Doe #1"),[5] who repeatedly struck her with a baton in her head, arms, shoulders, and back. (Id. ¶¶ 2, 33-37). John Doe #1 then handcuffed Ms. Holloway, allegedly causing bruising to Ms. Holloway's wrists because the cuffs were too tight. (Id. ¶¶ 38-39). John Doe #1 was allegedly assisted by two female officers ("Jane Doe #2" and "Jane Doe #3), who subsequently transported Ms. Holloway to a bus that would eventually transport her and others to jail. (Id. ¶¶ 40-41). None of the officers told Ms. Holloway why she was being arrested, nor did they advise her of her rights. (Id. ¶ 42).

Ms. Holloway then asked an individual whom she believed was a "commanding officer" why she was being arrested, and why he was allowing officers to "violently arrest peaceful protestors." (Id. ¶¶ 2, 45). The "commanding officer"—whom Ms. Holloway originally named as "John Doe #4" and subsequently identified as defendant Captain Sheppard—allegedly "responded by calling [Ms. Holloway] a 'bitch' and slamming her head into the window of a bus." (Compl. ¶¶ 2, 44-46; see also FAC ¶¶ 2, 45-47).[6] Ms. Holloway was then taken by bus to Brooklyn Central Booking ("BCB"), where she was searched, booked, interrogated, and placed in a holding cell until she was released at approximately 4:00 a.m. the next day. (FAC ¶¶ 48, 50-51, 54, 56). Throughout that time, Ms. Holloway received no medical attention, was never

---

[5] Ms. Holloway describes John Doe #1 as an NYPD officer and "a white male with black hair and dressed in riot gear." (FAC ¶ 33).

[6] Ms. Holloway claims that during a status conference held with this Court on November 22, 2022, the City identified Captain Sheppard as John Doe #4, based on Ms. Holloway's description of the officers involved. (Mot. Adm. at 3). The City denies that claim, indicating that it was plaintiff who had identified Sheppard as John Doe #4. (City's letter response, dated March 14, 2023 ("City's Resp. Mot. Adm.") (ECF No. 31 at 1). Instead, the City represented at the November 22, 2022 conference that the City "had not yet identified any of the John Doe officers." (Id.)

Mirandized (despite not consenting to interrogation), was never given the opportunity to make a phone call, and was deprived of basic necessities.  (Id. ¶¶ 49, 52-53, 55).

As a result of the attack by Captain Sheppard and other NYPD officers, Ms. Holloway "suffered physical and emotional injuries, including nerve and optical damage that threaten her career as a professional photographer," as well as "concussions; bruising; [and] bodily pain, including headaches and neck pains."  (Id. ¶¶ 2, 57-58).  She alleges that, as a result, she has "had to reduce the number of days she works per week" and has an impaired "ability to perform routine work functions," such as using ladders for photoshoots or spending significant periods of time shooting photos, "reading, using the computer, and traveling by train and car."  (Id. ¶¶ 59-61).  Ms. Holloway also alleges that her mental and emotional health have been impaired as a result of the incident.  (Id. ¶ 62).

Ms. Holloway brings claims of excessive force, unlawful seizure, and false arrest in connection with her arrest on June 3, 2020, pursuant to 42 U.S.C. § 1983 (Claims 1-2).  (Id. ¶¶ 98-113).  Ms. Holloway also brings claims of false arrest, false imprisonment, assault and battery, negligent and intentional infliction of emotional distress, negligence, and negligent supervision, retention, and training, pursuant to New York State Law and the New York State Constitution (Claims 3-7).  (Id. ¶¶ 114-141).  Ms. Holloway seeks compensatory and punitive damages as well as reasonable costs and attorney's fees.  (Id. at 30).

## PROCEDURAL BACKGROUND

This Court previously ruled on several discovery disputes between the parties on September 28, 2023.  (Order[7] at 31).  Specifically, the Court deferred decision on plaintiff's request for sanctions; granted plaintiff's Motions to Compel; and granted in part and denied in

---

[7] Citations to "Order" refer this Court's Order of September 28, 2023.  (ECF No. 48).

part plaintiff's Motion for Admissions.  (Id.)  The Court further Ordered the parties to engage in additional fact discovery, including discovery related to the disputes therein.  (Id.)

On December 14, 2023, plaintiff moved for an award of attorney's fees incurred in bringing her successful Motions to Compel.  (ECF No. 52).  On February 22, 2024, plaintiff also moved for an award of attorney's fees incurred in bringing her partially successful motion regarding Requests for Admission.  (ECF No. 63).

On December 19, 2023, plaintiff filed a separate Motion for Sanctions, asserting that defendants had failed to comply with this Court's September 28, 2023 Order, by failing to:  (1) produce summonses for all eight arrestees who were transported with plaintiff in the bus to Brooklyn Central Booking; and (2) produce documents relating to any complaints filed against defendant Captain Sheppard relating to the protests in the summer of 2020.  (ECF No. 54).  The Court addresses each motion in turn.

<u>PLAINTIFF'S MOTIONS FOR ATTORNEY'S FEES</u>

Plaintiff first moves for an award of attorney's fees based upon her earlier successful Motions to Compel as reflected in the Court's Order of September 28, 2023.

A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 37(a)(5)(A) states that if a motion to compel is "granted [in full] . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The Court may only deny such an award if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," "the opposing party's nondisclosure, response, or objection was substantially justified," or "other

circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).  If the

motion is granted in part and denied in part, however, "the court may . . . apportion the

reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

Rule 36 further provides that "Rule 37(a)(5) applies to an award of expenses" when the

requesting party brings a successful motion challenging the sufficiency of an answer or

objection.  Fed. R. Civ. P. 36(a)(6).

B.  Analysis

As discussed at length in this Court's September 28, 2023 Order, plaintiff filed two letter

motions to compel (1) responses to her Second Document Requests and Interrogatories (ECF No.

28), and (2) the production of records that may identify key eyewitnesses in response to her

Third Document Requests (ECF No. 35) (together, "Motions to Compel").  (See Order at 1-2).

In addition, plaintiff moved to have the Court deem certain facts admitted and for sanctions (ECF

No. 27) ("Motion for Admissions").  (See id.)  The Court now assesses whether plaintiff should

be awarded fees for each in turn.

1)  Plaintiff's Motions to Compel

This Court granted plaintiff's Motions to Compel in full (Order at 2), so the Court must

award plaintiff's reasonable fees unless one of the three exceptions applies.  See Creative Res.

Grp. of N.J. v. Creative Res. Grp., Inc., 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (stating that Rule

37(a)(5)(A) provides that "the losing party on a motion to compel **must** pay reasonable expenses,

barring extenuating circumstances" (citing cases)) (emphasis in original).

The only exception that may apply here is whether there was a substantial justification for

the City's refusal to produce or answer the requests at issue in plaintiff's Motions to Compel.

"Whether a party was substantially justified in resisting discovery is determined by 'an objective

standard of reasonableness and does not require that the party have acted in good faith.'" Jindan Wu v. Seoul Garden, Inc., No. 16 CV 3613, 2018 WL 507315, at *8 (E.D.N.Y. Jan. 22, 2018). A substantial justification exists "where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." Hong v. JT Home Management LLC, No. 18 CV 2612, 2023 WL 6609303, at *1 (E.D.N.Y. Sept. 20, 2023).

The City argues that plaintiff's motion for fees should be denied because the Court's ruling in its September 28, 2023 Order "demonstrates that some of the City's discovery responses were substantially justified, and . . . the circumstances would make an award of expense[s] unjust." (Defs.' MTC Fees Opp.[8] at 2).  The City further argues that it would be unjust to award fees and expenses because the motions "involved a genuine dispute on the law as to the scope and breadth of plaintiff's discovery demands[;]" plaintiff has not been prejudiced nor has she asserted she has been prejudiced; "this is the first dispute that necessitated motion practice[;] and there is no history of malfeasance between the parties."  (Id. at 3).

In its assessment of plaintiff's First Motion to Compel, the Court found that the City's various objections and refusals to produce responsive information were boilerplate, violative of Rule 36, and otherwise unconvincing in several ways, including, but not limited to, being: frivolous (see id. at 18); "without merit" and "outweighed by Ms. Holloway's need" (id. at 20); contradictory to the point of "suggest[ing] bad faith" (id. at 21); and "nonsensical" (id. at 22). Notably, the City also concedes that the Court "held that the City did not establish sufficient bases" for its "proffered objections to the scope and breadth of the plaintiff's demands." (Defs.' MTC Fees Opp. at 2).  Thus, the Court finds that the City's objections to plaintiff's First Motion

---

[8] Citations to "Defs.' MTC Fees Opp." refer to defendants' letter in opposition to plaintiff's motion for attorney's fees for her successful First and Second Motions to Compel, filed on January 5, 2024.  (ECF No. 55).

to Compel were not substantially justified and no other extenuating circumstances exist. Accordingly, the Court Orders the City defendants to pay plaintiff's reasonable fees for her successful First Motion to Compel.

Turning to plaintiff's Second Motion to Compel, the City also opposes plaintiff's request for fees, arguing that because the Court "separately analyzed the City's objections based on burden and proportionality and privacy," this "demonstrated that they were justified, even though the City did not ultimately prevail." (Defs.' MTC Fees Opp. at 2). The City further argues that "the parties had opposing views on the law as to the scope and breadth of plaintiff's discover[y] requests" and that, "in reliance on existing case law, the City raised what it believed to be good faith objections to the discovery requests." (Id.) In her reply, plaintiff contends that "this Court's analysis of the two objections confirms that they were unjustified[,]" and she reasserts her entitlement to fees for prevailing on her Second Motion to Compel. (Pl.'s Reply at 1-2).

In its September 28, 2023 Order, the Court overruled the City's objections on proportionality and burden, finding that it was critical for plaintiff to know the identities of any potential eyewitnesses, "particularly in light of the City's apparent inability or unwillingness to identify any responsible police officers," and that the City only needed to "match the pictures of the individuals on the bus [from the body cam footage] with the booking photos." (Order at 28). The Court also dispensed with the City's privacy objection because there were "ample methods" the City could use to produce the "requested summonses without unduly compromising the security or privacy of the individuals who received those summonses."[9] (Id. at 29).

Thus, contrary to the City's arguments, the Court analyzed the basis for all of the City's "objections" and determined that none of them were substantially justified. Not only were

---

[9] Indeed, the City had already produced several summonses without apparent concern for the privacy of those individuals.

plaintiff's requests relevant, but the Court also found each of the objections on grounds of burden, proportionality, and privacy to be "unavailing" and "without substance."  Cf. Klein v. Torrey Point Group, LLC, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (finding that a "responding party's refusal to produce documents on the basis that they are irrelevant can provide substantial justification unless such a position 'involves an unreasonable, frivolous or completely unsupportable reading of the law'") (internal citations omitted).  The City's explanation for their refusal to identify the other potential eyewitnesses on the bus made no sense in light of the fact that they had voluntarily identified three of them and should have maintained records for the remaining five, all of whom were arrested and processed in a discrete period of time.  It was not as though plaintiff was asking defendants to search through hundreds of arrests in different precincts.  Unlike the court in the case cited by the City, Comprehensive Habilitation Services, Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006), this Court concludes that none of the City's objections "could be characterized as a justification having 'substan[ce]'" that would deem an award of plaintiff's fees improper.

Thus, the Court finds that an award of fees is also appropriate in connection with plaintiff's Second Motion to Compel because the City's failure to produce was not substantially justified.  Accordingly, the Court Orders the City defendants to pay plaintiff's reasonable fees for her successful Motions to Compel.

2) Plaintiff's Motion for Admissions

With regard to plaintiff's Motion for Admissions, this Court concluded that "although the City's answers do not comply with the requirements of the Rule, it would be premature at this juncture to deem RFA Nos. 1-4 admitted."  (Order at 8).  On the other hand, the Court held that RFA Nos. 5-7 were deemed admitted (id.), because "the record indicates that additional

discovery is unlikely to lead to any conclusion other than that the City should have admitted RFA Nos. 5-7." (Id. at 12).

For RFA Nos. 1-4, this Court found it would be "counterproductive and ultimately contrary to the fair assessment of the merits" if these RFAs were deemed admitted since "additional discovery seem[ed] likely to shed further light on the identities of the relevant officers[.]" (Id. at 11). Thus, the Court ordered the parties to engage in additional fact discovery, including depositions, and further ordered the City to serve its amended responses for RFA Nos. 1-4, including "additional detail on the nature of the City's investigation and, should the City maintain its current position, an explanation of why they are unable to admit or deny the requests in light of that investigation." (Id. at 12). The Court previously deferred judgment on the request for sanctions because the Court "lack[ed] sufficient information to assess the validity of the City's assertion that it cannot admit or deny the matters in RFA Nos. 1-4," but granted plaintiff leave to re-file after the discovery Ordered therein was completed. (Id. at 13).

The additional discovery Ordered by the Court has now been completed, and the City has now revised its responses to admit RFA Nos. 1-4. (See ECF No. 63, Ex. 2). Although this Court indicated that sanctions might be appropriate if the City "continue[d] to maintain that it can neither admit nor deny the RFAs" and plaintiff "later prove[d] the truth of the matters requested," given the City's admissions with respect to RFA Nos. 1-4, the Court finds that sanctions pursuant to Rule 37(c)(2) are not appropriate. (Order at 13 n.7). The Court finds that there was a substantial justification for the City's previous refusal to admit or deny RFA Nos. 1-4 because objectively, the City could have reasonably believed that further discovery was needed to allow it to respond. Accordingly, the Court denies plaintiff's motion for reasonable fees in connection with RFA Nos. 1-4.

The question now before the Court is whether fees should be awarded based on the Court's prior Order with respect to RFA Nos. 5-7.

The Court grants a partial award of plaintiff's reasonable fees for RFA Nos. 5-7 because the Court deemed RFA Nos. 5-7 admitted in its prior Order.  This qualifies as a successful motion to challenge the sufficiency of the City's answers, and there was no substantial justification for the City's failure to admit or deny because the record was clear; there was no explanation or rationale for the City's refusal to admit RFA Nos. 5-7.  (Order at 12-13).

C.  Calculation of Fee Award

The Court now addresses attorney's fees for plaintiff's successful Motions to Compel and partial attorney's fees for plaintiff's Motion for Admissions.  For her Motions to Compel, plaintiff seeks fees totaling $14,220.00, reflecting a total of 31.6 hours spent drafting both motions and supporting reply briefs for each.  (Animashaun MTC Decl.,[10] App'x A).  For plaintiff's Motion for Admissions, she seeks $6,975.00, reflecting a total of 15.5 hours spent drafting the motion and a supporting reply brief.  (Animashaun Adm. Decl.,[11] App'x A).  In total, plaintiff seeks $21,195.00 in fees for the various motions.

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  A reasonable fee is a "fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  Perdue v. Kenny A., 559 U.S. 542, 552 (2010).  "The traditional starting point for determining a reasonable

_____

[10] Citations to "Animashaun MTC Decl." refers to the Declaration of A. Dami Animashaun, filed on December 14, 2023.  (ECF No. 52-1).  This Declaration contains billing records as Appendix A ("MTC Billing Recs.").

[11] Citations to "Animashaun Adm. Decl." refers to the Declaration of A. Dami Animashaun, filed on February 22, 2024.  (ECF No. 63-1).  This Declaration contains billing records as Appendix A ("Adm. Billing Recs.").

attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. at 551-52), report and recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).  To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate."  Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013), report and recommendation adopted by 2013 WL 1622713 (Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."  Id.  As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using

the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."  2012 WL 676350, at *5, n.6.  "Courts in this circuit employ the same procedures for determining fees in the context of a sanction award."  Martinez v. City of New York, 330 F.R.D. 60, 66 (E.D.N.Y. 2019).

    1)  Counsel's Background and Experience

For these motions, plaintiff was represented by solo practitioner Akeeb Dami Animashaun, Esq., who maintains an office located at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  In accordance with New York State Association for Retarded Children, Inc. v. Carey, plaintiff's counsel submitted contemporaneous billing records, setting forth the dates and amounts of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (See MTC Billing Recs.; Adm. Billing Recs.)

Admitted to practice in New York and California, Animashaun is a 2016 graduate of Harvard Law School and started a solo practice in 2020.  (Animashaun MTC Decl. ¶¶ 1-2; Animashaun Adm. Decl. ¶¶ 1-2).  Animashaun serves or has served as lead counsel in several civil rights class actions across the country, garnering media coverage for high profile cases.  (Animashaun MTC Decl. ¶¶ 3-5; Animashaun Adm. Decl. ¶¶ 3-5).  Animashaun has also been retained by national legal nonprofit organizations and plaintiffs' law firms to "consult, advise, or otherwise participate in civil rights lawsuits concerning police misconduct and unconstitutional policies and practices in municipal criminal legal systems."  (Animashaun MTC Decl. ¶ 6; Animashaun Adm. Decl. ¶ 6).

2) <u>Hourly Rates</u>

In order to calculate the lodestar, the Court must first determine a reasonable hourly rate for the legal services performed.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 190. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . ." <u>Id.</u> at 186 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 433 (1983)).  Additionally, the Second Circuit has adopted the following factors, <u>inter alia</u>, to guide the inquiry as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 186 n.3 (citing <u>Johnson v. Georgia Highway Exp., Inc.</u>, 488 F.2d 714, 717-719 (5th Cir. 1974), <u>abrogated on other grounds by</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989)).  A number of recent cases have considered these factors when awarding attorneys' fees.  <u>See</u> <u>Lisnitzer v. Shah</u>, No. 11 CV 4641, 2022 WL 3931388, at *2 (E.D.N.Y. July 6, 2022), <u>report and recommendation adopted sub nom.</u> <u>Lisnitzer v. Zucker</u>, 2022 WL 3914964 (E.D.N.Y. Aug. 31, 2022), <u>amended by</u> 2023 WL 2020963 (E.D.N.Y. Feb. 15, 2023) (adjusting award by 62 cents); <u>see also</u> <u>Smith v. City of New York</u>, No. 19 CV 6198, 2022 WL 939711, at *4 n.3 (E.D.N.Y. Mar. 28, 2022).

Courts are also instructed to balance:

14

the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.

In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself.  See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

Plaintiff's counsel's standard billing rate for 2023 was $650 per hour, but plaintiff's

counsel only seeks a rate of $450 per hour for these motions.  (Animashaun MTC Decl. ¶ 11; Animashaun Adm. Decl. ¶ 11).  Plaintiff's counsel cites cases to support the assertion that $450 per hour is "well within the range of rates approved by courts in this District in civil rights cases for attorneys with similar experience."  (Animashaun Adm. Decl. ¶ 11 (citing Agudath Israel of Am. v. Hochul, No. 20 CV 4834, 2021 WL 577841, at *5 (E.D.N.Y. Dec. 6, 2021), aff'd, No. 22 CV 38, 2023 WL 2637344 (2d Cir. Mar. 27, 2023); Cidoni v. Woodhaven Center of Care, No. 21 CV 3654, 2023 WL 2465167, at *4 (E.D.N.Y. Mar. 10, 2023)).  Defendants do not contest the requested hourly rate.[12]

Courts in this district have recently awarded "experienced Section 1983 attorneys . . . fees calculated at an hourly rate of between $300.00 and $450.00."  Martinez v. City of New York, 330 F.R.D. at 70 (collecting cases).  See also Cidoni v. Woodhaven Center of Care, 2023 WL 2465167, at *4 (providing general range for hourly rates of "$300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience" (internal citations omitted) (collecting cases)); Agudath Israel of America v. Hochul, 2021 WL 577841, at *7 (awarding a fee of $500 for a partner with 15 years of experience who did not specialize in civil rights litigation, and awarding fees of $350-$375 for senior associates with 6-8 years of experience based on complexity of the case).  "The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields."  Agudath Israel of America v. Hochul, 2021 WL 577841, at *5.

The complexity of a case often warrants a higher fee award.  Id. at *6.  After considering case authority in this district, the nature of these discovery motions, plaintiff's counsel's

---

[12] As discussed further infra, defendants' objections to plaintiff's attorney's fees requests appear to be limited to the number of hours claimed.

credentials, including years of experience and civil rights expertise, as well as the absence of any objections from defendants, the Court finds that Animashaun's requested hourly rate of $450 is within the range of rates generally awarded in this district for this type of work.

3) Hours Billed

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)). In this Circuit, judges are required to "'use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440; see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung

17

Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' counsel's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

For plaintiff's First Motion to Compel, counsel billed 9.2 hours for drafting, researching, revising, and proofing the motion and 4.1 hours for drafting, researching, and proofing the reply brief in support of the motion.  (MTC Billing Recs.)  For plaintiff's Second Motion to Compel, counsel billed 11.3 hours for drafting, researching, and proofing the motion, and 7 hours to review defendants' opposition and draft, research, and proof plaintiff's supporting reply brief. (Id.)  For plaintiff's Motion for Admissions, counsel billed 10.4 hours for drafting and researching the motion and 5.1 hours for drafting and revising the reply in support of the motion. (Adm. Billing Recs.)  Defendants argue that if the Court determines that an award of attorney's

fees is warranted, the hours billed should be reduced based on two grounds: (1) vagueness, since plaintiff's counsel billed time for unspecified legal research (Defs.' MTC Fees Opp. at 3 (citing SEC v. Yorkville Advisors, LLC, No. 12 CV 7728, 2015 U.S. Dist. LEXIS 24578 at *34-38)); and (2) the City's own unsupported assertion that an attorney of plaintiff's counsel's experience should have been able to draft the Motions to Compel and any associated reply papers in "15 hours" (id. at 3-4), and the Motion for Admissions and any associated reply papers in "9.5 hours." (Defs.' Adm. Fees Opp.[13] at 4).

The Court is not persuaded by defendants' arguments. Given plaintiff's counsel's years of experience and status as a solo practitioner, the Court finds the hours billed for the First Motion to Compel and Reply and for the Second Motion to Compel to be reasonable. Cf. Hong v. JT Home Management LLC, 2023 WL 6609303, at *5 (reducing hours by 30% because partner with over 20 years of experience inexplicably and unreasonably billed 10.5 hours on a motion to compel and 10.5 hours exclusively drafting a reply); Underdog Trucking, L.L.C. v. Verizon Services Corp., 276 F.R.D. 105, 113 (S.D.N.Y. 2001) (reducing junior associate's hours billed for drafting a reply brief to 5.4 hours). However, the Court will reduce the hours billed for plaintiff's Reply in support of her Second Motion to Compel from 7 hours to 4.5 hours, resulting in a slight reduction of the total hours billed for the Motions to Compel from 31.6 to 29.1 hours. The 15.5 hours billed for the Motion for Admissions are hereby reduced by 50% to 7.75 hours to account for the partial success of that motion. Multiplying a total of 36.85 hours across all motions by an hourly rate of $450, the Court awards plaintiff's counsel a total of $16,582.50 in attorney's fees.

---

[13] Citations to "Defs.' Adm. Fees Opp." refer to defendants' letter in opposition to plaintiff's motion for attorney's fees for her partially successful Motion for Admissions, filed on March 11, 2024. (ECF No. 65).

<u>PLAINTIFF'S MOTION FOR SANCTIONS</u>

Following the issuance of this Court's Order granting the First and Second Motions to Compel and partially granting the Motion for Admissions, plaintiff filed a subsequent Motion for Sanctions on December 19, 2023, alleging that defendants failed to comply with this Court's September 28, 2023 Order.  (ECF No. 54).

A.  <u>Legal Standard</u>

Courts may impose sanctions upon a party or counsel who deliberately fails to comply with a court order.  <u>See, e.g.</u>, <u>Penthouse Int'l, Ltd. v. Playboy Enters., Inc.</u>, 663 F.2d 371, 386 (2d Cir. 1981) (explaining that "[a] federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices"); <u>Powell v. Ward</u>, 643 F.2d 924, 931 (2d Cir. 1981); <u>see also</u> <u>Prelvukaj v. Naselli</u>, No. 19 CV 5939, 2023 WL 3570659, at *4 (E.D.N.Y. May 18, 2023) (explaining that "'[w]hether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses . . . '" (quoting <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 267 (2d Cir. 1999))).  Rule 37 of the Federal Rules of Civil Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery orders.  <u>See, e.g.</u>, <u>World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.</u>, 694 F.3d 155, 158 (2d Cir. 2012) (explaining that "Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct").

Rule 37 provides in relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just

orders."  Fed. R. Civ. P. 37(b)(2)(A).  In Update Art, Inc. v. Modiin Publishing, Ltd., the Second

Circuit described the three purposes behind sanctions under Rule 37:

> First, they ensure that a party will not benefit from its own failure
> to comply.  Second, they are specific deterrents and seek to obtain
> compliance with the particular order issued.  Third, they are
> intended to serve a general deterrent effect on the case at hand and
> on other litigation, provided that the party against whom they are
> imposed was in some sense at fault.

843 F.2d 67, 71 (2d Cir. 1988) (citing National Hockey League v. Metropolitan Hockey Club,

Inc., 427 U.S. 639 (1976) (per curiam), and Cine Forty-Second St. Theatre Co. v. Allied Artists

Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)); see also Southern New Eng. Tel. Co. v.

Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010).  As the court in Baba v. Japan Travel

Bureau International, Inc., noted:  "'[A]ll litigants . . . have an obligation to comply with court

orders. When they flout that obligation[,] they . . . must suffer the consequences of their

actions.'"  111 F.3d 2, 5 (2d Cir. 1997) (quoting McDonald v. Head Crim. Ct. Supervisor

Officer, 850 F.2d 121, 124 (2d Cir. 1988)).

An order requiring a party to comply with its discovery obligations or with another

party's discovery requests is a necessary predicate to sanctions under Rule 37(b).  See, e.g.,

Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) (explaining that

"[p]rovided that there is a clearly articulated order of the court requiring specified discovery, the

district court has the authority to impose Rule 37(b) sanctions for noncompliance with that

order"); see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, No. 16 CV

1318, 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017).  An order need not be written to be

enforceable under the Rule.  See Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d at 388;

see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at

*18 (explaining that "[t]he order disobeyed can take a variety of forms, and need not be written").

For violations of such an order, Rule 37 lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii).  In addition, the Rule provides that the court may issue an order that certain "designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i); cf. Prelvukaj v. Naselli, 2023 WL 3570659, at *7 (ordering "an instruction be given at trial . . . that had the hours-of-service logs been produced, they would indicate that [defendant] drove more than eleven hours by the time of the alleged accident"), or the court may issue an order "prohibiting the disobedient party from . . . introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii); see also Figueroa v. W.M. Barr & Co., Inc., No. 18 CV 11187, 2020 WL 996473, at *4 (S.D.N.Y. Mar. 2, 2020) (precluding plaintiff from introducing or relying on an expert report in response to a summary judgment motion or at trial).

As discussed supra, in lieu of or in addition to these sanctions, the Rule requires a court to order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  See also Roadway Express, Inc. v. Piper, 447 U.S. 752, 763-64 (1980) (holding that "[b]oth parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders"); Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *20 (explaining that "[t]he [c]ourt has

wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel"). Indeed, courts have awarded attorney's fees and costs where sanctions were appropriate, but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default.  See, e.g., Excellent Home Care Servs., LLC v. FGA, Inc., No. 13 CV 5390, 2017 WL 9732082, at *8-12 (E.D.N.Y. June 5, 2017) (ordering plaintiff to re-produce and produce certain documents, respond to interrogatories, and pay defendants' attorney's fees where defendant sought sanctions that included dismissal); Seena Int'l, Inc. v. One Step Up, Ltd., No. 15 CV 1095, 2016 WL 2865350, at *14 (S.D.N.Y. May 11, 2016).

Rule 37's listed sanctions are non-exclusive, and the Rule explicitly contemplates that courts will order other sanctions so long as they are "'just'" and "'commensurate with the noncompliance.'"  See Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *21 (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007)).  "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."  Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 267.  "The court's inquiry in deciding whether to impose less severe sanctions, such as fines and cost-shifting, focuses primarily on the misconduct of the party to be sanctioned."  Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., No. 18 CV 1471, 2020 WL 1172635, at *6 (E.D.N.Y. Feb. 20, 2020), report and recommendation adopted, 2020 WL 1166616 (E.D.N.Y. Mar. 11, 2020).

In evaluating whether to impose more serious discovery sanctions, courts consider the following non-exclusive factors:  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  Bhagwanani v. Brown, 665 F. App'x 41, 42-43 (2d Cir. 2016) (summary order) (alteration in original) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)); see also Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d at 144; Burke v. ITT Auto., Inc., 139 F.R.D. 24, 34 (W.D.N.Y. 1991) (listing several factors courts should consider in evaluating sanctions); Arnold v. Krause, Inc., 232 F.R.D. 58, 76 (W.D.N.Y. 2004). Courts in this circuit have held that a party's failure to comply with a discovery order is willful when the court's order is clear, the party has understood the order, and the party's failure to comply is not due to circumstances beyond the party's control.  See, e.g., Jensen v. Allied Burton Sec. Servs., No. 10 CV 2043, 2011 WL 4382347, at *3 (E.D.N.Y. May 27, 2011), report and recommendation adopted, 2011 WL 4382459 (E.D.N.Y. Sep. 20, 2011); In re Fosamax Prods. Liab. Litig., No. 07 CV 3652, 2010 WL 1779276, at *2 (S.D.N.Y. Apr. 27, 2010).

 "For more severe sanctions, such as dismissal, preclusion[,] or the imposition of an adverse inference, the court must also assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence."  Nycomed U.S. Inc. v. Glenmark Generics Ltd., 2010 WL 3173785, at *3.  Significant prejudice to the moving party may counsel for a harsher sanction, but a lack of prejudice to the moving party does not counsel against the imposition of a sanction.  Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., 2020 WL 1172635, at *6.  In deciding what the appropriate sanction in a matter is, the court should consider "'the prophylactic, punitive[,] and remedial rationales' of

discovery sanctions." Nycomed U.S. Inc. v. Glenmark Generics Ltd., 2010 WL 3173785, at *10

(quoting Passlogix, Inc. v. 2FA Tech., LLC, 2FA, Inc., No. 08 CV 10986, 2010 WL 1702216, at

*37 (S.D.N.Y. Apr. 27, 2010) (discussing discovery sanctions in the context of spoilation of

evidence)).

    B.  Analysis

      1)  The Identification of Potential Witnesses

Pursuant to plaintiff's Second Motion to Compel discovery, this Court issued an Order on

September 28, 2023, noting that the City had been unable to identify any of the officers involved

in the arrest and alleged assault of Ms. Holloway, and requiring defendants to "provide Ms.

Holloway with the summonses issued to the individuals on the bus and . . . provide the

summonses issued at Brooklyn Central Booking an hour before and an hour after Ms.

Holloway's booking." (Order at 29). Defendants had previously produced three of those

summonses inadvertently. (Id.) One of the summonses was issued to a witness on the bus who

allegedly saw defendant Captain Sheppard slam plaintiff's head into the window, and another to

an individual who was detained with plaintiff and witnessed her injuries. (Pl.'s Sanctions Mot.[14]

at 2).

According to plaintiff, in response to the Court's Order, defendants again produced the

three summonses that had been previously provided, along with one summons issued within an

hour of Ms. Holloway's arrest. (Id.) On November 30, 2023, following defendants' request for

an extension of time to comply with the Court's Order, defendants produced two additional

summonses that they claim were issued to individuals transported with plaintiff. (Id. at 2-3).

They explained that there were two additional summonses that they could not provide "because

---

[14] Citations to "Pl.'s Sanctions Mot." refer to plaintiff's letter motion for sanctions, including an Order of preclusion, dated December 19, 2023. (ECF No. 54).

their booking photographs were destroyed by operation of law."[15]   (Id.)  In an effort to explain why plaintiff's photograph had not been destroyed like these others, defendants responded that "the photographer at BCB who took the event [booking] photo of plaintiff and Officer Moses gave Officer Moses the photo that Officer Moses retained in her file."  (Id. (alteration in original)).  Although plaintiff asked whether defendants' counsel had asked the other officers who issued summonses whether they retained copies of booking photos, defendants had not done so and "would not commit to doing so."  (Id.)

In defendants' January 5, 2024 letter, filed in opposition to plaintiff's Motion for Sanctions, defendants concede that, in response to plaintiff's request that they speak to the officers who issued summonses at Brooklyn Central Booking, they indicated that "they would have to determine the feasibility of doing so before deciding whether they would agree to do so." (Defs.' Sanctions Opp.[16] at 2).  Defendants argue that they have taken "reasonabl[e]" steps to obtain the summonses of other individuals who were on the transport bus with the plaintiff.  (Id. at 3).  Defendants also assert that they have now identified seven out of eight people who were on the bus.  (Id. at 4).  Moreover, in an effort to identify these individuals, defendants asked the NYPD to provide a list of the summonses issued at Brooklyn Central Booking and they were provided a list of 41 summonses issued one hour before and one hour after plaintiff's summons was issued.  (Id.)

In a supplemental letter dated January 13, 2024, plaintiff indicates that within 23 days of the filing of the instant Motion for Sanctions, defendants identified two additional individuals

---

[15] It is unclear why the absence of booking photographs meant that defendants could not provide the summonses; presumably, the names of the individuals would be reflected on the summons even if their booking photos were no longer available.  Since defendants have now provided all of the summonses requested by plaintiff, this purported justification holds even less weight.

[16] Citations to "Defs.' Sanctions Opp." refer to defendants' letter in opposition to plaintiff's motion for sanctions, filed January 5, 2024.  (ECF No. 56).

who were transported to Brooklyn Central Booking with the plaintiff.  (Pl.'s Supp. Ltr.[17] at 1-2).

Plaintiff further suggests that it only took nine days for defendants to identify these individuals,

arguing, based on statements from defendants' opposition, that "[d]efendants began interviewing

the officers that identified Rochan and Haigley on January 2 (ECF [No.] 56 at 5), and identified

both individuals by January 11."  (Id. (citing Defs.' Sanctions Opp. at 5)).  Plaintiff contrasts the

speed of these identifications with the fact that "in the 82 days between the issuance of the

[Court's] Discovery Order and the filing of the Sanctions Motion, defendants identified only two

individuals who were transported to BCB with plaintiff."  (Id. at 2).  Plaintiff argues that a

preclusive order and an award of attorneys' fees are appropriate sanctions because defendants

"knowingly violated this Court's Discover[y] Order" and they "provide no basis or justification

as to why they failed to take basic steps to identify individuals transported to BCB with

[p]laintiff before [p]laintiff filed" the Motion for Sanctions.  (Pl.'s Reply[18] at 5-6).

Having considered the parties' respective arguments and understanding that plaintiff has

now received the names of all eight witnesses on the bus, the Court finds that an Order of

preclusion is not warranted at this time.  While the Court finds that defendants should have

voluntarily undertaken the obvious actions necessary to identify the other individuals on the bus,

without the need for a court order, and that defendants readily admit that they were considering

the feasibility of a search for this information despite the Court's clear Order, their conduct does

not rise to level that requires the imposition of the harsh sanction sought by plaintiff.

Accordingly, the Court denies plaintiff's request for sanctions at this time.

---

[17] Citations to "Pl.'s Supp. Ltr." refer to plaintiff's supplemental letter, filed January 13, 2024, identifying additional facts in support of her motion for sanctions.  (ECF No. 59).

[18] Citations to "Pl.'s Reply" refer to plaintiff's reply in response to defendants' opposition to plaintiff's request for sanctions, filed January 8, 2024.  (ECF No. 58).

2)  <u>Complaints Against Defendant Captain Sheppard</u>

In the September 28, 2023 Order this Court also directed defendants to produce documents reflecting any complaints filed against defendant Captain Sheppard relating to any protests between May 1, 2020 and December 31, 2020.  (Order at 21-22).  In the Order, the Court explicitly held that it deemed all privilege objections to the production of such records waived given the defendants' failure to produce a privilege log.  (<u>Id.</u> at 20, n.10).  Despite this Court's Order, plaintiff alleges that defendants withheld three complaint-related documents on the basis of privilege.  (Pl.'s Reply at 4).

In their January 5, 2024 opposition letter, defendants explain that they had provided all applicable Civilian Complaint Review Board ("CCRB"), Internal Affairs Bureau ("IAB"), and Department Advocates Office ("DAO") files pertaining to Captain Sheppard, with the exception of two draft CCRB closing reports and the Case Analysis and Review ("CAR") memo from the DAO.  (Defs.' Sanctions Opp. at 2).  Defendants contend that these documents are protected by the deliberative process privilege; in addition, they question why two of the documents are relevant given that they pertain to an unrelated incident and plaintiff has already received the final closing reports from the CCRB.  (<u>Id.</u> at 2).

In support of their assertion of the privilege, defendants have provided a Declaration from Nancy Slater, Assistant Deputy Commissioner of the New York City Police Department Advocates Office,[19] dated January 5, 2024 ("Slater Decl."), and a Declaration from Matthew D. Kadushin, General Counsel at the CCRB, dated January 5, 2024 ("Kadushin Decl."), attesting that the CAR memo and the CCRB reports are deliberate and pre-decisional, and thus covered by

---

[19] The DAO is responsible for prosecuting Members of the Service for misconduct.  (Slater Decl. ¶ 2). After reviewing the investigatory files prepared by, among others, the NYPD Internal Affairs Bureau and the CCRB, makes recommendations as to the appropriate level of discipline.  (<u>Id.</u>)

the deliberative process privilege.  (Defs.' Sanctions Opp., Exs. A, B).  Defendants acknowledge

that they erred by not providing a privilege log, and they cite cases suggesting that the failure to

provide a privilege log alone does not warrant a waiver – "only flagrant violations should result

in a waiver of privilege."  (Defs.' Sanctions Opp. at 7 (quoting Pem-America, Inc. v. Sunham

Home Fashions, No. 03 CV 1377, 2007 U.S. Dist. LEXIS 80548, at *5 (S.D.N.Y. Oct. 31,

2007))).  Defendants further argue that since the documents at issue are not relevant to plaintiff's

claims, and plaintiff has failed to explain why she needs these documents, defendants argue that

they should be allowed to assert privilege and not disclose them.  (Id.)

　　　In her January 8, 2024 letter, plaintiff construes defendants' letter as a request for

reconsideration of the Court's prior Order.  (Pl.'s Reply at 3).  Plaintiff contends that not only is

a request for reconsideration untimely under Local Civil 6.3 (id.), and defendants have failed to

show good cause why they should be relieved of that deadline, but defendants have also failed to

make the necessary showing that there are controlling decisions or data that the Court

overlooked.  (Id. at 4 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995))).

Plaintiff argues that an Order of preclusion[20] is warranted to deter defendants from engaging in

further discovery abuses, and an award of fees is appropriate because a motion for sanctions was

required in order to get defendants to comply with their discovery obligations.  (Id. at 5).[21]

　　　a)  Relevance

　　　Defendants assert that two of the documents at issue are not related to the incident at

issue in this matter, although they fail to clearly specify whether the two irrelevant documents

are the two CCRB draft closing reports or one of the draft closing reports and the CAR memo

---

[20] Although plaintiff seeks an Order of preclusion, it is unclear what plaintiff seeks to preclude defendants
from offering in evidence.

[21] In a footnote, plaintiff suggests that if the Court concludes that a preclusive sanction is too harsh, then it
should impose "a hefty fine, payable to Plaintiff . . . ."  (Pl.'s Reply at 6, n.4).

from the DAO file.  (See Defs.' Sanctions Opp. at 2, 7, 8).  Nor do defendants provide any information in their privilege log about the subject matter of the withheld documents that would allow the Court to determine their relevance.  (See ECF No. 54-3).

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal court cases.  Rule 26(b)(1) "authorizes discovery of any 'nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting Fed. R. Civ. P. 26(b)(1)).  "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'"  Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

Given the absence of sufficient information, the Court is unable to determine if these documents have been properly withheld on the basis of relevance.

b)  The Assertion of Privilege

As discussed above, despite this Court's clear Order finding a waiver of any assertion of privilege (Order at 20, n.10), defendants now seek to withhold these three documents on the basis of deliberative process privilege.  (See Defs.' Sanctions Opp. at 7-8; ECF No. 54-3).[22]

If defendants wanted to withhold documents based upon the assertion of the deliberative process privilege or any other applicable privilege, they were first required to "describe the

---

[22] In their opposition letter, defendants assert that the privilege log belatedly served on plaintiffs on November 27, 2023 "asserted work product and/or deliberative process privilege" over the documents now at issue. Since the Court found a waiver of privilege in its September 28, 2023 Order, and defendants only raise arguments regarding the deliberative process privilege in their opposition letter, the Court will not revisit its previous finding of waiver of work product protection.

nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Local Civil Rule 26.2(b) further "commands, inter alia, that when documents sought . . . are withheld on the ground of privilege, [a privilege log] shall be furnished in writing *at the time of the response to such discovery or disclosure*, unless otherwise ordered by the court." FG Hemisphere Assocs., L.L.C. v. Republique Du Congo, No. 01 CV 8700, 2005 WL 545218, at *5 (S.D.N.Y. Mar. 8, 2005) (emphasis added). Accordingly, "the starting position is that the privilege log must be served with the objections [to discovery requests] . . . and that the failure to do so may result in waiver of the privilege claims." In re Chevron Corp., 749 F. Supp. 2d 170, 181 (S.D.N.Y. 2010), aff'd sub nom., Lago Agrio Plaintiffs v. Chevron Corp., 409 F. App'x 393 (2d Cir. 2010).

In its September 28, 2023 Order, this Court found that the circumstances of this case warranted a finding that defendants had waived any claims of privilege and work product protection by virtue of their failure to timely submit a privilege log and by improperly asserting the deliberative process privilege. The Court noted that "[a]fter raising the same boilerplate objections of relevance, burden, not proportional to the needs of the case, defendants also objected to these two requests on the grounds that the requests 'seek[] information that is publicly available and equally available to both parties,'" while at the same time asserting that the requests are "objectionable because they implicate the privacy of non-parties to the action or reflect ongoing investigations protected by the law enforcement and/or deliberative process privilege." (Order at 20). Noting that defendants cannot claim that the documents are both publicly available and protected by a privilege, the Court also found that any privilege had been waived by defendants' failure to provide a privilege log. (Order at 21).

The Court also admonished the City for objecting to plaintiff's Interrogatory No. 14 "on the grounds that the request 'implicates attorney work product and/or any other applicable privileges'" (id. at 23 (quoting ECF No. 28 at 9)), stating that the City did not properly "assert the deliberative process privilege" because it could not assert the privilege without a showing that "the agency making the determination to dismiss the summons" had performed the "requisite review." (Id. at 24). Additionally, to invoke the deliberative process privilege, the agency claiming the privilege "must provide precise and certain reasons for preserving the confidentiality of the information," and "a claim of privilege must specifically designate and describe the information that is purportedly privileged." Mobil Oil Corp. v. Department of Energy, 520 F. Supp. 414, 416 (N.D.N.Y. 1981) (internal quotation marks omitted). Furthermore, the Court found that even if the privilege had been properly asserted, it would not apply to Interrogatory No. 14, which asked the City to state the reasons why it declined to prosecute the plaintiff and/or why it dismissed the summons, because courts in this district have held that "'[a] prosecutor's decision to indict or not prosecute someone is not a policy decision,' and only those 'records that bear on the formulation or exercise of policy-oriented judgment' are protected by the deliberative process privilege." (Order at 24-25 (quoting Lawrence v. Suffolk Cnty., No. 19 CV 2887, 2022 WL 855380, at *10 (E.D.N.Y. Mar. 23, 2022))). Thus, the Court also Ordered the City to respond to Interrogatory No. 14. (Id. at 25).

Following the Court's Order compelling the production of these complaints and responses to plaintiff's interrogatories despite defendants' assertions of privilege, it took defendants until November 27, 2023 to actually produce documents in response to the Court's Order, including the belated, inadequately detailed privilege log for the contested CCRB closing reports and CAR memo. (Defs.' Sanctions Opp. at 6, 7). The supporting declarations for

defendants' assertion of the deliberative process privilege were not produced until January 5, 2024, in response to plaintiff's instant Motion for Sanctions.  (See Defs.' Sanctions Opp., Exs. A, B).  It is unclear why it took more than two months to produce these documents when defendants should have collected and reviewed them at least eight months earlier when preparing their March 15, 2023 response to plaintiff's February 21, 2023 Motion to Compel.  Apart from the blatantly inconsistent positions taken by defendants' counsel in responding to plaintiff's discovery requests, their inability to immediately produce the relevant records and an adequately detailed privilege log suggest that they had not collected all of the relevant responses and/or had not actually reviewed them for privilege.

Courts in this Circuit have refused to uphold a claim of privilege "where privilege log entries fail to provide adequate information to support the claim," OneBeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 CV 2271, 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006) (citing United States v. Constr. Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)), or where "no privilege log has been produced."  Id.; see also Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 167 (S.D.N.Y. 2008) (noting that "[c]ases rejecting claims of privilege based on the inadequacy of the privilege log alone typically involve an absence of basic information . . . or a failure to produce a log at all"); FG Hemisphere Associates, L.L.C. v. Republique Du Congo, 2005 WL 545218, at *6 (citing cases) (holding that "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege").

However, taking into account "all relevant factors," when the party fails to produce an adequate privilege log, it is "within the Court's discretion to grant leniency as to documents which would be covered by [a privilege or protection] except for the waiver."  In re Chevron

<u>Corp.</u>, 749 F. Supp. 2d at 181-82 (noting that Local Rule 26.2 "has not always been enforced rigidly," as some courts "have limited enforcement to situations in which there was no sufficient justification for the failure to produce a log on time or to seek leave to delay"); <u>see also</u> <u>OneBeacon Ins. Co. v. Forman Int'l, Ltd.</u>, 2006 WL 3771010, at *8 (observing that granting leniency is "risky," but nonetheless declining to order production of documents and instead directing the withholding party to submit an appropriate privilege log).

At this time, without sufficient information to determine either the relevance or privileged nature of the documents being withheld, the Court is not in a position to determine whether they are relevant or whether there is a reason for the Court to exercise its discretion to grant leniency with respect to defendants' failure to properly assert privilege as to these documents. Accordingly, the Court Orders defendants to provide the three contested documents to the Court for *in camera* review by **October 7, 2024**. In addition, counsel for defendants is Ordered to familiarize themselves with the Local Civil Rules, which are clear as to the requirement to provide a privilege log. <u>See</u> <u>In re Chevron Corp.</u>, 749 F. Supp. 2d at 182 (taking into account the clarity of Rule 26.2 as cutting in favor of waiver).

<u>CONCLUSION</u>

For the reasons stated above, the Court Orders defendants to pay plaintiff $16,582.50, representing her reasonable fees for her successful Motions to Compel and her partially successful Motion for Admissions. The Court denies plaintiff's Motion for Sanctions related to defendants' alleged noncompliance with the Court's September 28, 2023 Order, pending further review of the documents at issue. By **October 7, 2024**, defendants must provide the three contested documents for which they seek reconsideration of the waiver of deliberative process privilege to the Court for *in camera* review.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 27, 2024

_Cheryl L. Pollak_

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York