```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  ALEXANDRIA HOLLOWAY,

                          Plaintiff,
                                                              MEMORANDUM AND ORDER
                -against-                                     21 CV 3858 (AMD) (CLP)

  THE CITY OF NEW YORK, et al.,

                          Defendants.
-----------------------------------------------------------X
```
**POLLAK**, United States Magistrate Judge:

On July 9, 2021, Alexandria Holloway ("Ms. Holloway" or "plaintiff") commenced this action against the City of New York (the "City") and John and Jane Does 1 through 50 (the "Doe defendants"), bringing claims under both 42 U.S.C. § 1983 and New York State Law for injuries she allegedly suffered when she was unlawfully arrested during a protest. (Compl.[1]). On May 2, 2023, plaintiff filed an Amended Complaint, naming as additional defendants the New York City Police Department (the "NYPD"), and Captain Tarik Sheppard ("Captain Sheppard") in his individual capacity. (FAC[2]).

Currently pending before this Court are defendants' Motion to Compel (ECF No. 67) and the Court's *in camera* review related to plaintiff's Motion for Sanctions (see ECF Nos. 54, 72). For the reasons set forth below, the Court grants defendants' Motion to Compel and finds that defendants' documents are not protected by the deliberative process privilege.

BACKGROUND

The factual and procedural background of this case are recited comprehensively in the Court's September 27, 2024 Discovery Order and incorporated by reference herein. (See

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed July 9, 2021. (ECF No. 1).
[2] Citations to "FAC" refer to plaintiff's First Amended Complaint, filed on consent on May 2, 2023. (ECF No. 40).

1

9/27/24 Order[3] at 2-5). The following facts are relevant to this Order: plaintiff Alexandria Holloway alleges that she was "one of many New Yorkers who was violently attacked and unlawfully arrested by the NYPD" while peacefully protesting at Cadman Plaza on the night of June 3, 2020. (FAC ¶¶ 2, 11). As a result of the alleged attack by Captain Sheppard and other NYPD officers, Ms. Holloway "suffered physical and emotional injuries, including nerve and optical damage that threaten her career as a professional photographer," as well as "concussions; bruising; [and] bodily pain, including headaches and neck pains." (Id. ¶¶ 2, 57-58). She alleges that, as a result, she has "had to reduce the number of days she works per week" and has an impaired "ability to perform routine work functions," such as using ladders for photoshoots or spending significant periods of time shooting photos, "reading, using the computer, and traveling by train and car." (Id. ¶¶ 59-61). Ms. Holloway also alleges that her mental and emotional health have been impaired as a result of the incident. (Id. ¶ 62).

Ms. Holloway brings claims of excessive force, unlawful seizure, and false arrest in connection with her arrest on June 3, 2020, pursuant to 42 U.S.C. § 1983 (Claims 1-2). (Id. ¶¶ 98-113). Ms. Holloway also brings claims of false arrest, false imprisonment, assault and battery, negligent and intentional infliction of emotional distress, negligence, and negligent supervision, retention, and training, pursuant to New York State Law and the New York State Constitution (Claims 3-7). (Id. ¶¶ 114-141). Ms. Holloway seeks compensatory and punitive damages as well as reasonable costs and attorney's fees. (Id. at 30).

On September 28, 2023, this Court ruled on several discovery disputes between the parties. (See generally ECF No. 48). The Court then considered plaintiff's Motions for Attorney's Fees related to her successful Motions to Compel, and Ordered defendants to pay

---

[3] Citations to "9/27/24 Order" refer to this Court's Order of September 27, 2024 (ECF No. 72).

2

plaintiff $16,582.50, "representing her reasonable fees for her successful Motions to Compel and her partially successful Motion for Admissions." (9/27/24 Order at 34). Separately, plaintiff filed a Motion for Sanctions related to defendants' alleged noncompliance with the Court's September 28, 2023 Order and their belated claim of privilege. (See id.[4] at 20-34). Plaintiff sought an Order of preclusion to "deter defendants from engaging in further discovery abuses" and an award of attorney's fees because "a motion for sanctions was required in order to get defendants to comply with their discovery obligations." (Id. at 29). The Court denied plaintiff's Motion for Sanctions, pending further review of the documents at issue. (Id. at 34). The Court Ordered defendants to submit the contested documents for *in camera* review by October 7, 2024 (id.), and defendants complied. (See ECF Nos. 74, 76).

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal court cases, and the scope is particularly broad in federal civil rights cases. See Walls v. City of New York, 502 F. Supp. 3d. 686, 692 (E.D.N.Y. 2020) (citing Bailey v. City of New York, No. 14 CV 2091, 2015 WL 4523196, at *3 (E.D.N.Y. July 27, 2015)). Rule 26(b)(1) "authorizes discovery of any 'nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). Relevance under Rule 26 has been "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in th[e] case.'" Giacchetto v.

---

[4] In its September 27, 2024 Order, the Court acknowledged that defendants filed a Motion to Compel the production of employment records for plaintiff's business, Allie Holloway, LLC on March 28, 2024 (ECF No. 67), but indicated that it would be addressed in a separate Order. (See 9/27/24 Order at 1 n.3).

3

Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 114 (E.D.N.Y. May 6, 2013) (alteration in original) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). While Rule 26(b) was amended in 2015 to move the proportionality language to the provision defining the scope of discovery, "[t]he 2015 amendment[ ] . . . did not establish a new limit on discovery." ValveTech, Inc. v. Aerojet Rocketdyne, Inc., No. 17 CV 6788, 2021 WL 630910, at *2 (W.D.N.Y. Feb. 18, 2021); see also Robertson v. People Mag., No. 14 CV 6759, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) (explaining that the amendment "serves to exhort judges to exercise their preexisting control over discovery more exactingly"); Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (explaining that "[r]estoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality").  Accordingly, Rule 26 as amended "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." Carl v. Edwards, No. 16 CV 3863, 2017 WL 4271443, at *2 (E.D.N.Y. Sept. 25, 2017) (quoting Vaigasi v. Solow Mgmt. Corp., No. 11 CV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016)).

Nevertheless, while the scope of discovery is "broad," it is not "limitless." Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).  The party seeking discovery must show that it is not engaging in "merely a fishing expedition." Carl v. Edwards, 2017 WL 4271443, at *3 (quoting Barbara v. MarineMax, Inc., No. 12 CV 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)).  The Rule requires courts to limit the extent of discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

4

I.     Defendants' Motion to Compel

On March 28, 2024, defendants filed a letter Motion to compel "plaintiff to produce certain necessary discovery relating to plaintiff's purported economic damages," pursuant to Federal Rules of Civil Procedure 34 and 37.  (Defs.' Mot.[5] at 1).  Defendants assert that during plaintiff's deposition on January 30, 2024, she testified that since 2019, she has been "the sole proprietor of her own company . . . tak[ing] professional photographs and handl[ing] the day to day operations of her own business, which includes handling her own invoices and contracts."  (Id. at 2 (citing Ex. B at 10-11)).  According to defendants, plaintiff also testified that "the invoices or bills she maintains show who assigned her a particular photography job."  (Id. (citing Ex. B at 36-37)).

Based on plaintiff's testimony during her deposition, defendants made a contemporaneous demand for a release "to obtain the employment records for Allie Holloway, LLC for the period of 2019 to the present[,]" and memorialized their demands in an email sent to plaintiff's counsel on February 15, 2024.  (Id. (citing Ex. B at 38, Ex. C)).

Defendants assert that they are entitled to obtain a release for plaintiff's employment records for Allie Holloway, LLC, because those records are relevant and discoverable.  (Id. at 3).  Defendants assert that courts have required a plaintiff "seeking lost wages or claiming severe emotional damages to provide a release granting defendants access to that plaintiff's employment records, including unemployment records."  (Id. (citing cases)).  Defendants argue that plaintiff has "put her employment status and capacity to earn income squarely at issue" by alleging "emotional and economic damages as a result of her arrest on June 3, 2020, including the allegation that she has lost income, and has sustained diminished earning capacity."  (Id.)  As

---

[5] Citations to "Defs.' Mot." refer to defendants' letter motion to compel plaintiff's employment records for her business, Allie Holloway, LLC, filed on March 28, 2024 (ECF No. 67).

such, defendants claim, they are "entitled to fully explore all claims regarding lost wages and diminished earning capacity" by accessing plaintiff's employment records because those records would "contain relevant information regarding how much and how often plaintiff has been able to work despite her alleged injuries." (Id.)

By letter dated April 9, 2024, plaintiff objects to defendants' request, arguing that defendants' motion is improper because a release for Allie Holloway, LLC is not "the appropriate means by which a defendant should seek records held by a plaintiff who is represented by counsel." (Pl.'s Opp.[6] at 2-3). Plaintiff contends that defendants' citations merely support the "unremarkable proposition that releases for third-party employment records are discoverable when a plaintiff claims lost income" (id. at 2), but that defendants should have "issue[d] Rule 34 document requests for the specific records to which they believe they are entitled" because that would have been "procedurally correct." (Id. at 3 (citing DiFrancesco v. Win-Sum Ski Corp., No. 13 CV 148, 2017 WL 696838, at *4 (W.D.N.Y. Feb. 22, 2017))). Plaintiff also argues that the Court cannot compel production of documents that were not requested via Rule 34. (Id. (citing Schwartz v. Marketing Pub. Co., 153 F.R.D. 16, 21 (D. Conn. 1994))).

By letter dated April 17, 2024, defendants assert that plaintiff "does not contest the fact that her employment records are relevant and discoverable because she alleges physical and emotional injuries as a result of the underlying incident that have threatened her career as a professional photographer[.]" (Defs.' Reply[7] at 1). Defendants then contend that they did issue Rule 34 document requests for plaintiff's employment records (id. at 2 (citing Ex. A,

---

[6] Citations to "Pl.'s Opp." refer to plaintiff's letter in opposition to defendants' motion to compel, filed on April 9, 2024 (ECF No. 68).

[7] Citations to "Defs.' Reply" refer to defendant's reply in further support of their motion to compel, filed on April 17, 2024 (ECF No. 69).

Interrogatory No. 6 and Doc. Req. No. 14)), and that they renewed their request at plaintiff's deposition when they learned that she "maintained invoices, contracts, and bills as part of her LLC employment records." (Id. at 2). Defendants assert that plaintiff has "admitted that the employment records will eventually have to be provided" (id. at 3 (citing Pl.'s Opp. at 4)), and that plaintiff has not provided a reason "why there should be a deferral in providing the employment records [until] 'after liability issues are addressed.'" (Id. (quoting Pl.'s Opp. at 4)).

Having considered the parties' arguments, the Court finds that defendants are entitled to all of plaintiff's employment records maintained by the LLC, including invoices or bills, reflecting the jobs Allie Holloway, LLC has received, and plaintiff's earnings for those jobs, from 2019 to the present. Despite the parties' disagreement as to whether defendants properly requested these records, the records are proportional to the needs of the case and plainly relevant to defendants' assessment of plaintiff's allegations that her arrest on June 3, 2020 caused her emotional distress and physical injuries that have impacted her career. (See FAC ¶¶ 2, 57-58, 59-61, 62). The records could help defendants ascertain whether the number of jobs, or the amount of pay plaintiff received per job, meaningfully changed after her arrest.

Prior to her deposition, plaintiff responded to defendants' First Set of Interrogatories and Request for Production of Documents on January 5, 2022. (See Defs.' Mot., Ex. A). Interrogatory No. 6 asked plaintiff to identify all of her employers "for the past ten (10) years," and although plaintiff objected on burden and proportionality grounds, she also stated that she is currently self-employed. (Id. at 6-7). In response to defendants' Document Request No. 14, which asked plaintiff to execute "authorizations for release of employment records for each of plaintiff's employers for the past ten (10) years[,]" she objected based on relevance and scope, but indicated that her compensation and medical records are related to the claims and defenses in

7

this case, and that she would provide "a release for employment records from 2019 to present." (Id. at 19-20).

In her opposition to defendants' motion, plaintiff has not argued that the employment records are irrelevant or not proportional to the needs of the case, nor has she argued that producing the records would be unduly burdensome. See, e.g., Sokol v. Wyeth, Inc., No. 07 CV 8442, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008) (stating that a party resisting a motion to compel must specifically show how, "despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each [request] is overly broad, burdensome[,] or oppressive") (internal citations and quotation marks omitted). Indeed, apart from asserting certain purported procedural deficiencies with respect to defendants' request, plaintiff primarily argues that she is "materially indistinguishable" from her company, and that a release directed to the company would improperly result in communications with a represented party. (Pl.'s Opp. at 1-2). However, as defendants note, plaintiff appears to assume that the records will need to be produced at some point in this litigation. (See id. at 4).

The fact that plaintiff is the sole proprietor of Allie Holloway, LLC does not obviate the propriety of defendants' requested release for employment records maintained by the corporate entity. Accordingly, defendant's Motion to compel plaintiff to execute a release directed at Allie Holloway, LLC is granted. The release should be limited to requests for plaintiff's employment records in the custody and control of Allie Holloway, LLC, specifically any records from 2019 to the present, including invoices, bills, or other records reflecting the jobs that Allie Holloway, LLC received during the relevant time period and plaintiff's earnings for those jobs. If necessary, defendants may issue a subpoena to Allie Holloway, LLC, which the Court will so Order.

8

II.   *In Camera* Review

Following the issuance of this Court's September 28, 2023 Order, plaintiff filed a subsequent Motion for Sanctions on December 19, 2023, alleging that defendants failed to comply with the Court's Order by failing to: (1) produce summonses for all eight arrestees who were transported with plaintiff in the bus to Brooklyn Central Booking; and (2) produce documents relating to any complaints filed against defendant Captain Sheppard relating to the protests in the summer of 2020. (See ECF No. 54 at 1-2).

With respect to the identification of the eight arrestees, the Court denied plaintiff's request for sanctions, specifically an Order of preclusion, since plaintiff eventually received the names of all eight witnesses on the NYPD bus. (See 9/27/24 Order at 27). While the Court found that "defendants should have voluntarily undertaken the obvious actions necessary to identify the other individuals on the bus, without the need for a court order, and that defendants readily admit that they were considering the feasibility of a search for this information despite the Court's clear Order, their conduct does not rise to level that requires the imposition of the harsh sanction sought by plaintiff." (Id.)

With respect to complaints against Captain Sheppard, the Court found that it did not have sufficient information to determine whether the documents withheld by defendants were properly withheld on the basis of relevance. (Id. at 29-30). The Court also found that it did not have sufficient information regarding the privileged nature of the withheld documents to determine "whether there is a reason for the Court to exercise its discretion to grant leniency with respect to defendants' failure to properly assert [deliberative process] privilege as to these documents." (Id. at 34). The Court Ordered defendants to provide the three contested documents – two draft Civilian Complaint Review Board ("CCRB") closing reports and one Department Advocates

9

Office ("DAO") Case Analysis and Recommendation ("CAR") memorandum – for the Court's review *in camera* by October 7, 2024 (id.), and defendants complied.  (See ECF Nos. 74, 76).

A. Legal Standard

The deliberative process privilege protects certain intra- and inter-agency documents from disclosure in litigation.  The privilege is intended to protect against chilling communications between public officials or decisionmakers, who may be dissuaded from having candid discussions about important policy decisions if they fear that those conversations may become public.  See Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002) (internal citations and quotation marks omitted).  The privilege "does not operate indiscriminately to shield all decision-making by public officials."  Davis v. City of New York, No. 10 CV 699, 2011 WL 1742748, at *6 (S.D.N.Y. May 5, 2011).  It is limited to protecting "communications relating to policy formulation at the higher levels of government."  Id.

Documents must be both "predecisional" and "deliberative" to be protected by the privilege.  Tigue v. United States Dep't of Justice, 312 F.3d at 76.  A document is predecisional when it is "prepared in order to assist an agency decisionmaker in arriving at [their] decision." E.B. v. New York City Bd. of Educ., 233 F.R.D. 289, 292 (E.D.N.Y. 2005); see also Schiller v. City of New York, No. 04 CV 7921, 2007 WL 136149, at *9 (S.D.N.Y. Jan. 19, 2007) (stating that a document is predecisional when "it forms an essential link in a specified consultative process") (internal citations and quotation marks omitted).  A document that "explain[s] or interpret[s] an existing policy or measur[es] compliance with existing procedures is not predecisional, and thus is not privileged." E.B. v. New York City Bd. of Educ., 233 F.R.D. at 292 (citing cases).  A document is deliberative when it is "actually . . . related to the process by which policies are formulated." Grand Cent. Partnership v. Cuomo, 166 F.3d 473, 482 (2d Cir.

10

1999).  Deliberative documents can include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Id.

The privilege is a qualified one.  Once it has attached, "there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information."  Davis v. City of New York, 2011 WL 1742748, at *2.  When balancing the parties' competing interests, courts consider a variety of factors including:

> (1) the relevance of the evidence to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognized that their secrets are violable.

E.B. v. New York City Bd. of Educ., 233 F.R.D. at 292.

As a general rule, the deliberative process privilege does not extend to "purely factual, investigative matters" or "factual observations."  Id. (internal citations and quotation marks omitted).  As such, "factual findings and conclusions, as opposed to opinions and recommendations[,] are not protected" by the privilege.  Id.  However, where factual information is "inextricably intertwined with policy making recommendations so that their disclosure would compromise the confidentiality of deliberative information" entitled to protection, that information should not be disclosed.  New York Times Co. v. United States Dep't of Justice, No. 19 CV 1424, 2022 WL 2304173, at *2 (S.D.N.Y. June 27, 2022).  If the factual portions of a document are "severable without compromising the private reminder of the document[], then the factual portions must be disclosed, even though the deliberative material remains protected." Ramooe, Inc. v. City of New York, No. 13 CV 1045, 2017 WL 5054713, at *3 (E.D.N.Y. Nov. 2, 2017); see also Davis v. City of New York, 2011 WL 1742748, at *4.

Many courts in this district have found that CCRB and Internal Affairs Bureau ("IAB") documents investigating police misconduct or "recommendations concerning disciplinary review of a discrete incident do not involve the policy formulations protected under the deliberative process privilege." Davis v. City of New York, 2011 WL 1742748, at *6. See also Walls v. City of New York, 502 F. Supp. 3d at 698 (citing cases) (stating that "courts have found that the deliberative process privilege does not preclude the disclosure of documents concerning CCRB, IAB[,] or like investigations into discrete misconduct events in civil rights suits"); Velez v. City of New York, No. CV 2004-1775, 2010 WL 2265443, at *4 (E.D.N.Y. June 2, 2010) (citing cases) (stating that "many courts have held that the deliberative process privilege does not preclude the disclosure of documents concerning internal affairs investigations in civil rights suits against law enforcement agencies").

B. Analysis

In compliance with this Court's Order, defendants submitted the following documents for *in camera* review: (1) the final version of the CCRB closing report for Case No. 202004772, an internal complaint related to plaintiff's arrest on June 3, 2020, and two red-lined drafts of that report (ECF No. 74-1 – Ex Parte; ECF No. 76-1 – Ex Parte); (2) the final version of the CCRB closing report for Case No. 202003980, an internal complaint related to the arrests of two women at a George Floyd protest on June 4, 2020, and two to three red-lined drafts of that report (ECF No. 74-2 – Ex Parte; ECF No. 76-2 – Ex Parte); and (3) the DAO CAR memorandum related to the two arrests on June 4, 2020 (ECF No. 74-3 – Ex Parte). (See also 9/27/24 Order at 34; Electronic Order, dated October 11, 2024).

Defendants have resisted plaintiff's request for the production of these documents, claiming privilege despite the Court's ruling that all privilege objections had been waived by defendants' failure to produce a privilege log pursuant to the Federal Rules. (See ECF No. 48 at

12

20 n.10). Although acknowledging the Court's prior ruling, defendants continue to argue that these documents are "protected by the deliberative process privilege." (Defs.' Opp.[8] at 2). Defendants also argue that the contested documents are "completely irrelevant to plaintiff's claims," and that plaintiff has not demonstrated "how her need for these documents outweighs the public interest in maintaining the confidentiality of these deliberations." (Id. at 8).

In support of their request to assert the deliberative process privilege as to the CCRB closing reports, defendants submitted the Declaration of Matthew D. Kadushin (the "Kadushin Declaration"), General Counsel for the CCRB. (Defs.' Opp., Ex. B). The Declaration attests that the CCRB "receive[s], investigate[s], hear[s], make[s] findings[,] and recommend[s] action upon complaints against uniformed members of the NYPD that allege misconduct." (Id. ¶ 2). The Kadushin Declaration also states that CCRB closing reports are prepared by an assigned investigator and include "the allegations against the member of service, a summary of the relevant evidence, . . . and then a recommendation from the investigator as to disposition of each allegation." (Id. ¶ 3). The CCRB "only has the power to make recommendations on how allegations of misconduct should be resolved and the level of discipline to impose[,]" while the Police Commissioner has "final authority on all matters of discipline." (Id. ¶ 4). The Kadushin Declaration asserts that these draft CCRB closing reports are covered by the deliberative process privilege because the reports are "merely recommendations provided to the CCRB Board to assist in the Board's decision-making process" and they "may also reflect legal advice and input

---

[8] Citations to "Defs.' Opp." refer to defendants' letter in opposition to plaintiff's motion for sanctions (ECF No. 54), filed on January 5, 2024. (ECF No. 56). As discussed supra, the Court denied plaintiff's motion for sanctions, pending further review of the contested documents. (See 9/27/24 Order at 34).

13

following consultation with agency attorneys who are part of the CCRB investigations unit."[9] (Id. ¶¶ 6-7).

As to the CAR memo, defendants submitted the Declaration of Nancy Slater (the "Slater Declaration"), Assistant Deputy Commissioner of the DAO. (Defs.' Opp., Ex. A). The Slater Declaration attests that the DAO is "responsible for prosecuting Members of the Service (MOS) for misconduct" and that DAO "receives investigatory files from the [IAB], NYPD Investigatory Units, NYPD Integrity Control Officers, and the [CCRB]." (Id. ¶ 2). A DAO attorney will review those files and draft a CAR memo that contains "a summary of the allegations, an analysis of the case and the disciplinary history of the MOS, and a recommendation regarding the appropriate penalty." (Id.) DAO executives then review the CAR memo to assess whether the recommendation is appropriate "based on a variety of metrics," returning the memo for editing if they disagree with the recommendation. (Id.) Once finalized, the CAR memo is sent to the Police Commissioner's Office, which will review the memo and issue a final determination as to the proper penalty. (Id.) The Declaration asserts that CAR memos are "by their very nature deliberative because they are prepared to ensure uniformity and fairness in the NYPD's disciplinary process" and that "disclosure of CAR memos would inhibit the candor of NYPD officials in the formulation of appropriate and fair penalties." (Id. ¶¶ 6-7).

Defendants' arguments are unavailing. In federal civil rights cases, "misconduct records are presumptively relevant and discoverable." Walls v. City of New York, 502 F. Supp. 3d at 692 (citing Fowler-Washington v. City of New York, No. 19 CV 6590, 2020 WL 5893817, at *1

---

[9] To the extent that defendants assert that the contested documents may include legal advice, those concerns would have been properly addressed by the timely assertion of attorney work product privilege. Given the Court's prior ruling that all privileges had been waived (see ECF No. 48 at 20 n.10), and given that defendants have only sought reconsideration as to the deliberative process privilege (see Defs.' Opp.), the Court does not consider these facets of defendants' arguments.

14

(E.D.N.Y. Oct. 5, 2020)).  In Walls v. City of New York, the court overruled defendants' relevance objections, citing cases that deemed misconduct complaints to be relevant even in the following circumstances:

> (1) where investigations found the complaints were "exonerated and unfounded, or where the complaints [were] withdrawn, abandoned or conciliated[;]"
> (2) where the complaints were made, or the underlying allegations occurred, "more than ten years prior to the contested incident[;]"
> (3) where complaints were made, or the underlying allegations occurred, "after the contested incident[;]" and
> (4) where the allegations were "allegedly dissimilar to the ones made in the contested incident, finding that they may influence an assessment of the credibility of [the] officers."

Id. at 693-94 (internal citations and quotation marks omitted).  In this case, relevance is much more straightforward – the contested documents are all directly relevant to plaintiff's case because they investigate alleged and/or substantiated misconduct by Captain Sheppard either on plaintiff's behalf, or in circumstances that are temporally proximate and substantially similar to the misconduct alleged in plaintiff's Complaint.

Furthermore, courts have held that the deliberative process privilege "cannot extend to local law enforcement agency personnel decisions 'without seriously thwarting the very purpose for which the privilege was created.'"  Walls v. City of New York, 502 F. Supp. 3d at 697 (quoting Morrissey v. City of New York, 171 F.R.D. 85, 89 (S.D.N.Y. 1997)).  The law is also clear that the deliberative process privilege "does not extend to materials related to the explanation, interpretation[,] or application of an existing policy."  Davis v. City of New York, 2011 WL 1742748, at *6.

The Court has reviewed the documents in question and finds that the documents merely investigate misconduct allegations raised against Captain Sheppard, collect and summarize evidence from officer and witness interviews and camera footage, and recommend either disciplinary action or resolution of the allegations based on a rote application of the NYPD's

15

established policies and procedures. These are precisely the kind of local law enforcement agency personnel decisions that are not protected by the privilege. See, e.g., Walls v. City of New York, 502 F. Supp. 3d at 690, 698 (finding that CCRB, IAB, and Central Personnel Index summaries "provid[ing] abbreviated information about misconduct complaints or matters in an officer's career-long personnel records" were not protected); Charles v. City of New York, No. 11 CV 0980, 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011) (finding IAB documents were not protected); National Cong. for Puerto Rican Rts. v. City of New York, 194 F.R.D. 88, 95 (S.D.N.Y. 2000) (finding deliberative process privilege did not apply to officers' disciplinary records).

To the extent that defendants raise objections based on the fact that the contested CCRB closing reports are drafts (see Defs.' Opp, Ex. B ¶¶ 6-7), the privilege does not automatically attach if defendant uses the words "draft" or "deliberations." See Davis v. City of New York, 2011 WL 1742748, at *5; see also American Civil Liberties Union v. Department of Defense, 2017 WL 4326524, at *15 (S.D.N.Y. Sept. 27, 2017) (stating that "courts have rejected the notion that draft documents are automatically covered by the deliberative process privilege"). A draft is covered by the privilege only to the extent that it "reflects the personal opinions of the writer rather than the policy of the agency" and it relates to a particular policy or decision that is covered by the privilege. Davis v. City of New York, 2011 WL 1742748, at *5. Again, these documents are not related to "policy formulation at the higher levels of government," and by their nature, they are not protected by the privilege.[10] Id. at *6.

---

[10] In this case, the Court also notes that the drafts are substantively similar to the final CCRB closing reports, while the vast majority of the edits are focused on ensuring that the facts are clearly presented, and that each allegation is assessed via the applicable NYPD guidelines and policies.

16

Given the Court's *in camera* review and the ample legal authority indicating that the contested documents are both relevant and not covered by the deliberative process privilege, the Court declines to exercise its discretion to protect these documents from disclosure.[11] Defendants are Ordered to provide the contested documents to plaintiff's counsel by **March 14, 2025**. To the extent that there are confidentiality or privacy concerns, those should be resolved by the Protective Order currently in effect. (See ECF No. 22).

CONCLUSION

For the reasons stated above, the Court grants defendants' Motion to Compel, and Orders plaintiff to execute the requested release by **March 21, 2025**. The Court also denies defendants' request to exercise its discretion to permit the assertion of the deliberative process privilege, and Orders defendants to produce the contested documents to plaintiff by **March 14, 2025**.

On or before **March 28, 2025**, the parties shall file a joint status report, which shall include an update as to the parties' compliance with this Order.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 7, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

---

[11] The Court declines to reopen the matter of sanctions related to defendants' failure to produce these documents. While defendants' conduct in belatedly asserting a claim of privilege has delayed these proceedings, defendants held a reasonable belief that deliberative process privilege protected these documents from disclosure. Only after the Court's *in camera* review has it become clear that the contested documents are carved out of the privilege's protections.