UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALEXANDRIA HOLLOWAY,

           *Plaintiff,*

– against –

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT CAPTAIN TARIK
SHEPPARD, JOHN AND JANE DOES
#1-50,

           *Defendants.*

**MEMORANDUM & ORDER**
21-cv-03858 (NCM) (PCG)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Alexandria Holloway brings this action against the City of New York, New York Police Department Captain Tarik Sheppard, and unnamed John and Jane Doe defendants alleging that she was subject to excessive force and unlawful arrest during a protest that occurred in Brooklyn in June 2020 (the "Protest"). *See* Am. Compl. ("AC"), ECF No. 40. The Court has scheduled a jury trial to commence on May 4, 2026. *See* Docket Entry dated Mar. 5, 2026. In advance of trial, plaintiff has submitted six motions *in limine*, and defendants have submitted thirteen motions *in limine*. *See* Mot. in Limine ("Pl's Mot."), ECF No. 105; Mot. in Limine ("Defs' Mot."), ECF No. 108; *see also* Resp. in Opp'n ("Pl's Opp'n"), ECF No. 116; Resp. in Opp'n ("Defs' Opp'n"), ECF No. 114. For the reasons stated herein, the parties' motions are variously granted, denied, or reserved for later ruling. The Court will rule on the reserved motions *in limine* at or following the Final Pretrial Conference.

**LEGAL STANDARD**

A district court's inherent authority to manage the course of trials encompasses ruling on motions *in limine. Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[1] A district court should exclude evidence on a motion *in limine* "only when the evidence is clearly inadmissible on all potential grounds." *Picard v. Sage Realty*, Nos. 20-cv-10109, 20-cv-10057, 2021 WL 5826295, at *2 (S.D.N.Y. Dec. 8, 2021). Courts considering a motion *in limine* "may reserve judgment until trial so that the motion is placed in the appropriate factual context." *United States v. Morel*, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010). Because a ruling on a motion *in limine* "is subject to change as the case unfolds," the district court's ruling "constitutes a preliminary determination in preparation for trial." *Busher v. Barry*, No. 14-cv-04322, 2019 WL 6895281, at *2 (S.D.N.Y. Dec. 18, 2019); *Luce*, 469 U.S. at 41–42.

**DISCUSSION**

I.      Plaintiff's Motions in Limine

Plaintiff has filed motions *in limine* to: (1) exclude the testimony of defendants' expert witness Dr. John Houten; (2) "exclude speculative testimony about officers issuing dispersal orders to unidentified individuals"; (3) "exclude evidence about the conduct of other protesters at any protest"; (4) "preclude defendants from introducing, or attempting to impeach [plaintiff] with, third-party narrative statements in her medical records";

---

[1]      Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

(5) "preclude defendants from introducing any testimony or evidence regarding collateral source payments"; and (6) permit plaintiff to treat defendants as adverse witnesses during her case-in-chief. Pl's Mot. 2.[2]

### A.    Exclusion of Dr. John Houten's Opinions

Plaintiff seeks to exclude the opinions of defendants' expert witness, Dr. John Houten, "because they fail to satisfy the requirements of Federal Rule of Evidence 702." Pl's Mot. 5. Specifically, plaintiff alleges that "Dr. Houten is not qualified to opine on the matters about which he seeks to testify, and his opinions lack a reliable foundation." Pl's Mot. 5. The Court will rule on plaintiff's motion as to Dr. Houten at or immediately after the Final Pretrial Conference.

### B.    Exclusion of Testimony Concerning Dispersal Orders

#### 1.    *Relationship Between Dispersal Orders and Probable Cause*

Plaintiff brings a claim for false arrest (among other claims), AC ¶¶ 114–21, and the parties agree that plaintiff's false arrest claim turns on whether defendants had probable cause to arrest her, Pl's Mot. 15; Defs' Resp. 8. Defendants maintain that they had probable cause to arrest plaintiff because she violated a curfew order issued by the Mayor of New York City known as Emergency Executive Order 119. Defs' Resp. 8; *see* Emergency Executive Order No. 119 ("EO 119" or "the Executive Order"), N.Y.C. Mayor's Office, June 2, 2023, https://a860-gpp.nyc.gov/concern/nyc_government_publications/rf55zc085. Plaintiff maintains that violation of EO 119 requires that an individual be given an order to disperse and nevertheless remain in violation. Defendants disagree, arguing that a dispersal order is not a prerequisite to violating EO 119. The Court therefore must address

---

[2]    Throughout this Order, page numbers for docket filings generally refer to the page numbers assigned in ECF filing headers.

3

the legal question of whether a dispersal order must have been given before defendants had probable cause to arrest plaintiff for violating EO 119.

The Executive Order reads in relevant part: "I hereby order a City-wide curfew to be in effect each day from 8:00pm until 5:00am . . . . During this time, no persons or vehicles may be in public . . . . Failure to comply with this Order shall result in orders to disperse, and any person who knowingly violates the provisions in this Order shall be guilty of a Class B misdemeanor." EO 119 at 2.

The wording of the Executive Order is not a model of clarity. On one reading, the two clauses that form the last sentence are not intertwined in any respect—in other words, the text is conveying: failure to comply with the Order shall result in orders to disperse, *but unrelated to that requirement, and in any event*, being in public after curfew is a misdemeanor. On another reading, the fact that the two clauses were combined into a single sentence suggests that the text is conveying that these two assertions are linked. The drafters could easily have separated these two clauses into separate sentences, a proponent of this second view could note, and the choice to combine them as a single sentence linked by a comma and the word "and" should be read to give the Executive Order different meaning than it would bear had the clauses appeared as separate sentences.

The Court finds that, in the context of the facts of this case, an "order[] to disperse" must have been given before plaintiff could be reasonably understood to have violated the Executive Order. The Court reaches this conclusion principally because the second reading of the Executive Order's text is the better reading. This second interpretation gives meaning to the choice of the drafters to combine the two clauses into a single sentence. Reading the Executive Order the other way would render the word "and" entirely irrelevant to the meaning of the text. Though not dispositive, the second interpretation is also

consistent with how the New York City Police Department ("NYPD") itself enforced the statute. Pl's Mot. Ex. 4 ("Sheppard Dep.") at 61:1–12, ECF No. 105-5 ( "Q**:** Before you made an arrest for a . . . violation of the curfew order, what did the person have to do? A**:** Refused to leave. Q**:** What did you have to do before you arrested them? A: Tell them to leave. . . . Give them a dispersal order."). Moreover, another court in the Eastern District confronted this identical legal question and likewise reached the conclusion (albeit for different reasons) that an order to disperse is a prerequisite to arrest for violation of the Executive Order. *See Pierce v. Ryder*, No. 21-cv-03482, 2025 WL 473979, at \*5 (E.D.N.Y. Feb. 12, 2025) ("a plain reading of the Executive Order indicates that a dispersal order had to be given (and disobeyed) before a person could be arrested for violating the curfew").

### 2.      *Testimony Regarding Dispersal Orders*

Plaintiff argues that "[d]efendants may try to elicit testimony through Defendant Sheppard and non-party Officer Danielle Moses that Defendant Sheppard and other unidentified officers issued dispersal orders to unspecified individuals at the Protest. This Court should preclude such testimony or evidence. Defendant Sheppard and Officer Moses have no first-hand knowledge that such an order was specifically given to [plaintiff], and they certainly cannot testify from first-hand knowledge that [plaintiff] ever heard such an order or was even within earshot of one." Pl's Mot. 16. Plaintiff also cites deposition testimony that she argues shows that "both witnesses have admitted they knew nothing of [plaintiff] before she was arrested" and "neither witness witnessed a dispersal order being issued at all." Pl's Mot. 16.

The Court declines to issue a blanket ruling excluding a broad swath of hypothetical testimony about dispersal orders. Should one of the witnesses testify that they gave a dispersal order to plaintiff, plaintiff's counsel is free to attempt to impeach the witness with

prior inconsistent statements consistent with the Federal Rules of Evidence. Also, plaintiff herself and plaintiff's own witnesses can testify (and be cross-examined) based on their own experiences of whether they were given a dispersal order and or whether they overheard a dispersal order given to someone else. Further, rather than granting plaintiff's broad request *in limine* to exclude certain evidence, the Court will rule on any objections raised by plaintiff, including hearsay and speculative testimony, during the course of trial. Accordingly, plaintiff's motion is DENIED.

### C.      Exclusion of Conduct of Other Protestors

Plaintiff asks the Court to "preclude [d]efendants from introducing testimony or other evidence about circumstances surrounding the Summer 2020 protests and about the alleged conduct of individuals at the [p]rotest, including videos depicting other protesters chanting, using expletives, or otherwise interacting with officers in ways having nothing to do with [plaintiff]." Pl's Mot. 17. Specifically, plaintiff seeks to exclude "a 16-minute video of protesters chanting during the [p]rotest" during which plaintiff "appears on camera for roughly one and a half minutes" and "is out of frame for the remainder of the 16-minute video." Pl's Mot. 18 (discussing Defs' Trial Ex. C).[3] Plaintiff also seeks to exclude portions of a 3-minute video which—aside from a 55-second portion that shows plaintiff kneeling in the street with her hands up that plaintiff does not object to—shows "an officer knocking a protester onto the ground, followed by an officer being knocked to the ground . . . and then officers arresting a protester and subsequently standing around and talking." Pl's Mot. 18–19 (discussing Defs' Trial Ex. D).[4] Finally, plaintiff argues that "[d]efendant may seek to introduce testimony about circumstances surrounding the Summer 2020 protests

---

[3]      This video is also the subject of defendants' motion *in limine*. Defs' Mot. 49–50.
[4]      Similarly, this video is the subject of defendants' motion *in limine*. Defs' Mot. 50.

or the conduct of other protesters at the Protest. Such testimony would be irrelevant and carry a strong risk of unfairly prejudicing, misleading, and confusing the jury, just like the videos above." Pl's Mot. 19.

The Court finds that the videos are relevant insofar as they bear on the general atmosphere of the protest at which the events in question took place. This atmosphere may in turn bear on issues before the jury, including the reasonableness of the force used by officers. For example, different uses of force might be considered appropriate to effectuate an arrest in a calm, run-of-the-mill environment versus an environment with hectic, chaotic conditions. *See Barnes v. Felix*, 605 U.S. 73, 80 (2025) ("Th[e] inquiry into the reasonableness of police force requires analyzing the totality of the circumstances."); *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: . . . the severity of the security problem at issue [and] the threat reasonably perceived by the officer."); *Barnes*, 605 U.S. at 80 ("[E]arlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones."); *Tennyson v. Francemone*, No. 24-2126, 2025 WL 3230500, at *1 (2d Cir. Nov. 19, 2025) (summary order) (evaluating the reasonableness of the amount of force used in light of the "chaotic scene" and contrasting the circumstances with a prior case involving mere "traffic disruptions[,] . . . the sort of public safety risk common to large public demonstrations, and not necessarily an imminent threat warranting a significant use of force."). Accordingly, the Court will permit defendants to introduce the entirety of the two videos.

The Court further holds that evidence concerning other protests—besides the specific protest at which the events at issue took place—is too far afield to qualify as relevant.

Finally, evidence concerning the conduct of other protestors at the protest in question, outside of the conduct depicted in the videos, will be admitted or excluded on a case-by-case basis at trial depending on the Court's judgment of whether the evidence is relevant to the issues being tried, whether the evidence is too far afield or too granular compared to the central issues in the case, and whether an appropriate amount of time is being devoted to such evidence. For example, testimony concerning the general atmosphere of the scene or the sequence of events that led to the witness encountering plaintiff is more likely to be admitted, while testimony about the details of altercations between other protestors and the police, or the specifics of injuries sustained by other protestors, is less likely to be admitted.

Accordingly, plaintiff's motion is GRANTED in part and DENIED in part.

D.    Exclusion of Plaintiff's Medical Records

Plaintiff seeks to exclude contents of a document from a medical clinic visited by plaintiff shortly after her arrest on the basis that the contents constitute hearsay. Pl's Mot. 19. The document says: "Pt states during a riot of Wednesday, she was pushed to the ground and landed on the R side of her body . . . . Pt states that when she fell, she did hit her head on the ground[.]" Pl's Mot. Ex. 8, ECF No. 105-9. There are two levels of statements involved: the patient's statement to the author of the record (the "inner" statement) and the author's written statement (the "outer" statement). The Court examines the admissibility of each.

First, the patient's statement to the author—if introduced into evidence by defendants—is not hearsay because it is an opposing party statement. *See* Fed. R. Evid. 801(d)(2) ("A statement that meets the following conditions is not hearsay: . . . [t]he statement is offered against an opposing party and . . . was made by the party . . . .").

8

Moreover, even if this statement were not excluded from the definition of hearsay by Rule 801(d)(2), it would be *admissible* hearsay because it constitutes a "Statement Made for Medical Diagnosis or Treatment" under Rule 803(4).

Plaintiff argues that defendants have not established that the inner statement was made by plaintiff herself, rather than some other individual. Pl's Mot. 21. The Court disagrees. Plaintiff does not dispute that she visited the medical clinic on the relevant date and was thus a patient of the clinic. *See* Pl's Mot. 19–23. The document conveys that it was the patient herself who made the inner statement, noting that "*Pt states* during a riot of Wednesday, she was pushed to the ground and landed on the R side of her body." Pl's Mot. Ex. 8 ("Medical Record") at 2, ECF No. 105-9 (emphasis added). While plaintiff cites a case where a district court excluded a statement that bears some resemblance to the statement at hand, *D.R. by Rodriguez v. Santos Bakery, Inc.*, in that case the patient was around thirteen years old and there was credible reason for uncertainty as to whether all of the statements made to the medical professional were made by plaintiff herself or by a family member. 675 F. Supp. 3d 355, 358, 360 (S.D.N.Y. 2023). In the present case, there is no similar reason to doubt that plaintiff herself made the statements to the medical clinic.

Second, the author's written statement (the outer statement) is hearsay because it is an out-of-court statement being offered in court to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Defendants could simply call the author of the document as a witness and have the author testify *in court* to what the patient stated during the medical appointment. That would not constitute hearsay. Instead, defendants are seeking to introduce the report, which is an out-of-court statement by the report's author.

9

Defendants maintain that the written statement can nonetheless be introduced because of an exception to the rule against hearsay—namely, the business records exception of Rule 803(6). Defs' Opp'n 19–20. "Courts in the Second Circuit regularly admit medical records as evidence pursuant to Federal Rule of Evidence 803(6), the business records exception to the hearsay rule." *Sepulveda v. City of New York*, No. 15-cv-05187, 2020 WL 2836952, at \*7 n.3 (E.D.N.Y. May 29, 2020). One of the requirements for Rule 803(6) is that the offering party establish that the evidence meets the exception via "testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D). Defendants have offered such a certification. *See* Defs' Opp'n Ex. 8 ("MedRite Certification"), ECF No. 114-8. Accordingly, the Court finds that the outer statement is not excluded hearsay due to the exception in Rule 803(6).

Because the Court does not see a valid basis to exclude either the inner statement or the outer statement, plaintiff's motion to exclude this evidence is DENIED.

E. Exclusion of Evidence Concerning Collateral Source Payments

Plaintiff seeks to preclude defendants from presenting evidence of collateral source payments, Pl's Mot. 23, but defendants state that they presently do not intend to offer such evidence, and if a reason to offer such evidence arises, they will first raise the issue with the Court outside the presence of the jury, Defs' Opp'n 17. Accordingly, plaintiff's motion is DENIED without prejudice.

F. Treatment of Defendant Sheppard and Officer Moses As Adverse Witnesses on Direct Examination

Plaintiff states that she may call Defendant Sheppard and Officer Moses as witnesses on direct examination and seeks leave to ask these witnesses leading questions

under Rule 611(c) of the Federal Rules of Evidence. Pl's Mot. 25. Defendants do not object to this request. Accordingly, plaintiff's motion is GRANTED.

II.    Defendants' Motions in Limine

Defendants have filed motions *in limine* to: (1) preclude the testimony of plaintiff's expert witnesses; (2) exclude certain evidence during the liability phase of a bifurcated trial; (3) preclude plaintiff from mentioning or introducing evidence of an investigation into the incident conducted by the New York City Civilian Complaint Review Board ("CCRB"); (4) preclude plaintiff from eliciting evidence of any officer's disciplinary history, prior lawsuits, or any other incidents in which they were involved; (5) preclude plaintiff from referring to defense counsel as city attorneys or suggesting that the city may indemnify the officers; (6) preclude plaintiff from requesting a specific dollar amount from the jury; (7) preclude plaintiff from seeking punitive damages; (8) preclude plaintiff from mentioning unrelated claims of officer misconduct; (9) preclude plaintiff from calling certain witnesses; (10) preclude plaintiff from offering defendants' responses to plaintiff's requests for admission; (11) preclude plaintiff from mentioning NYPD procedures or patrol guide provisions; (12) preclude plaintiff from introducing certain exhibits; and (13) preclude the admission of certain portions of body-worn camera ("BWC") footage.

A.    Exclusion of Plaintiff's Expert Witnesses

Defendants seek to exclude the testimony of plaintiff's experts—Dr. Siddhartha Nadkarni, M.D., Dr. Jessica Pearson, Psy.D., Linda Husted, RN, and Gary Crakes—because such testimony does not satisfy the requirements of Rule 702. Defs' Mot. 7–21. The Court will rule on defendants' motion as to these expert witnesses at or immediately after the Final Pretrial Conference.

Defendants also seek to exclude testimony from plaintiff's experts regarding certain injuries and illnesses that they maintain "cannot be causally connected to this case." Defs' Mot. 17. However, one of the issues at trial is whether actions of the defendants caused plaintiff's alleged injuries. It is thus appropriate for experts to testify about these injuries and illnesses, including—where appropriate—about their cause. Defendants may of course present their own evidence and argue to the jury that plaintiff's injuries stemmed from a different cause besides defendants' actions. Accordingly, the motion is DENIED in this respect.

Defendants also argue that plaintiff herself should be "precluded from offering . . . testimony [regarding causation] unsupported by admissible expert opinions." Defs' Mot. 17. In the Second Circuit, "expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999). However, as defendants concede, "[w]hether expert medical opinion evidence is required depends on the complexity of the injury and the likelihood that an ordinary person would come into contact with that injury" and "[f]or simple and familiar injuries, expert opinion is not necessarily required." Defs' Mot. 18 (citing *Jaquez v. Flores*, No. 10-cv-02881, 2016 WL 1267780, at *3 (S.D.N.Y. Mar. 30, 2016)).

The Court declines to make any preliminary blanket exclusion of testimony by plaintiff. However, should plaintiff attempt to testify about the causation of an injury or illness that exceeds the sphere of the common knowledge of a lay person where causation is not independently supported by expert testimony, defendants may object at that time. Accordingly, the motion is DENIED without prejudice in this respect.

### B.    Bifurcation of Trial

On January 20, 2026, the Court *sua sponte* advised the parties that it intended to bifurcate the trial between liability and damages. On April 8, 2026, the Court *sua sponte* advised the parties that it has reconsidered the prior ruling and that the trial will not be bifurcated. *See* Docket Entry dated Apr. 8, 2026. The Court will explain its reasoning for this decision at the Final Pretrial Conference. Thus, defendants' request to exclude certain evidence during the liability phase of the trial is DENIED as moot.

### C.    Exclusion of CCRB Evidence

The CCRB conducted an investigation regarding the use of force at issue in this case. Defs' Mot. 23; Pl's Trial Ex. 26. Defendants seek to preclude plaintiff "from referencing or introducing any evidence of this investigation, or any [investigation] into the underlying incident, as it will only serve to prejudice, confuse, and mislead the jury, except to the extent that statements made to investigators are properly used for impeachment or otherwise admissible evidence was obtained via said investigations." Defs' Mot. 23–24. Defendants do not cite a specific rule of evidence for this argument, but presumably defendants seek to exclude the evidence under Rule 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court does not agree that the probative value of evidence regarding the CCRB investigation is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or any other Rule 403 basis. Furthermore, the Court cannot rule on the admissibility of evidence concerning "any [other investigation] into the underlying incident," Defs' Mot. 23, until such evidence is presented to the Court.

Defendants also seek to exclude evidence on the basis that "any statements or findings of investigators are hearsay under Fed. R. Evid. 801 . . . [and] do not fall into any of the hearsay exceptions permitted under Rule 803." Defs' Mot. 24. The Court agrees that such statements are hearsay, but the Court disagrees that the statements do not fall into any of the hearsay exceptions. Rule 803(8) provides that "[a] record or statement of a public office" is not excluded by the rule against hearsay if "it sets out . . . factual findings from a legally authorized investigation[] and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Courts in the Second Circuit have held that CCRB findings are admissible hearsay under this exception. *See*, *e.g.*, *Williams v. McCarthy*, No. 05-cv-10230, 2007 WL 3125314, at *5 (S.D.N.Y. Oct. 25, 2007); *Hill v. City of New York*, No. 03-cv-01283, 2005 WL 3591719, at *4 n.1 (E.D.N.Y. Dec. 30, 2005). Moreover, defendants have not offered any persuasive reason to believe that the CCRB investigation at issue lacks trustworthiness.

Defendants also make a cursory argument that statements and findings of official, authorized government investigators "would likely constitute impermissible opinion testimony." Defs' Mot. 24. The Court disagrees. The United States Supreme Court held in *Beech Aircraft Corp. v. Rainey* that a public record or report otherwise admissible under Rule 803(8) is not rendered inadmissible simply because the public record or report contains opinions and conclusions. 488 U.S. 153, 170 (1988).

Accordingly, defendants' motion is DENIED with respect to the CCRB evidence and DENIED without prejudice with respect to evidence concerning any other investigation.

14

D.    Exclusion of Evidence of Any Officer's Past Acts

Defendants, citing Rules 404 and 403 of the Federal Rules of Evidence, seek to preclude plaintiff from: (1) "inquiring about any disciplinary histories and/or civil rights actions which have been filed against [D]efendant Sheppard, or any non-party police officers who may testify" or (2) "offering evidence of, or inquiring into, any substantiated allegations or discipline against Capt. Sheppard," including CCRB findings regarding Sheppard's conduct toward plaintiff on June 3, 2020 and toward a woman named Destiny Strudwick on June 4, 2020. Defs' Mot. 25–26. Defendants also seek to preclude plaintiff from "inquiring into the personnel files of [Sheppard] or any non-party police officers who testify," based on Rules 401–04 and 802 of the Federal Rules of Evidence. Defs' Mot. 26–27.

With respect to CCRB findings concerning the events at issue in the case, the Court has addressed such evidence *supra*. With respect to the remaining evidence described—except the items discussed below—the Court declines to issue blanket exclusions of hypothetical evidence without knowing the exact evidence sought to be excluded and the exact non-character purpose for which plaintiff seeks to admit it. Accordingly, the motion is DENIED without prejudice except as discussed below.

In response to defendants' motion, plaintiff states that she intends to introduce video of, and/or testimony regarding, two instances of Defendant Sheppard allegedly using excessive force—one with respect to a man named Ernesto Lopez and another with respect to Destiny Strudwick. Pl's Opp'n 35–40. The Court will consider defendants' objection that evidence regarding prior acts by Defendant Sheppard is prohibited by the rule against propensity evidence as well as the rule excluding evidence whose probative value is outweighed by the risk of unfair prejudice.

15

Federal Rule of Evidence 404(b)(1) states that evidence of past acts is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. However, Rule 404(b)(2) states that such evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Under *Huddleston v. United States*, for evidence to come in under 404(b)(2), the evidence must also satisfy Rule 403. 485 U.S. 681, 688 (1988). In other words, to offer evidence of past acts, (1) the offering party must have a permissible non-propensity reason, and (2) it cannot be the case that the "danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind." *Id*.

Plaintiff offers three arguments for why this evidence should be admitted. First, plaintiff argues that the Lopez video "helps establish Mr. Sheppard's identity" because "it provides a visual link showing that the Mr. Sheppard who is admittedly captured in the Lopez video is the same officer seen near the bus in body-worn-camera footage." Pl's Opp'n 39. The Court will defer ruling on this until trial based on whether Sheppard's identity in the body-worn camera footage is reasonably in dispute, whether the Lopez video is particularly probative as to Sheppard's appearance in the body-worn camera footage, and whether the Court finds the Lopez video admissible under Rule 403. Plaintiff also argues that the Strudwick video, which was taken the next day, "further confirm[s] [Sheppard's] identity as the officer in question." Pl's Opp'n 39. The plaintiff has not made clear how a video taken far in time away from the events in question can constitute evidence of Sheppard's identity in a relevant sense, but the Court will likewise defer ruling until trial.

Second, plaintiff argues that "the Lopez and Strudwick videos show that Mr. Sheppard repeatedly used unjustifiable and excessive force against women during the protests, establishing both his motive and intent to resort to force when he encountered Ms. Holloway outside the bus." Pl's Opp'n 39. The Court does not agree that either video goes to motive or intent with respect to Sheppard's alleged actions toward plaintiff. Rather, this argument appears to be an attempt to use the videos as character evidence by simply calling the use "motive and intent" rather than character.

Third, plaintiff argues that the videos can be introduced to show that Sheppard lied under oath when, confronted with plaintiff's allegations, he testified that "I didn't engage in that way with Ms. Holloway or . . . in that way at all or anybody else out in Cadman or anywhere else" and "I wouldn't do something like that." Pl's Opp'n 35 (first citing Pl's Mot. Ex. 4 ("Sheppard Tr.") at 111:17–18, ECF 105-5; and then citing Pl's Opp'n Ex. 6). In plaintiff's view, the Lopez and Strudwick video capture Sheppard doing to Lopez or Strudwick something that he claimed under oath he had never done and would never do. Accordingly, plaintiff contends that these videos are evidence that Sheppard previously lied under oath. Whether or not plaintiff's argument is correct would depend on, among other things, the factual question of whether the actions depicted in the Lopez and Strudwick videos are indeed actions that Sheppard claimed he would never do.

The Court finds that it does not need to address this question because, even if the answer were yes, the videos would still not be admissible. Rule 608 of the Federal Rules of Evidence prohibits the introduction of "extrinsic evidence . . . to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Accordingly, the plaintiff cannot use the Lopez or

17

Strudwick videos, in combination with Sheppard's statements under oath, to attempt to attack Sheppard's character for truthfulness.

Although Rule 608(b) forbids the introduction of the Lopez or Strudwick videos to attack Sheppard's truthfulness, the rule gives the Court discretion to, on cross-examination, allow specific instances of a witness's conduct "to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b). Accordingly, the Court will allow plaintiff to "inquire into" the truthfulness of Sheppard's statements that he "didn't engage in that way with Ms. Holloway or . . . in that way at all or anybody else out in Cadman or anywhere else" and that he "wouldn't do something like that." But plaintiff's counsel can do no more than ask Sheppard questions and permit the jury to hear Sheppard's answers.

Defendants' motion is thus GRANTED in part and DENIED without prejudice in part.

### E.    Referring to City

Defendants argue that plaintiff "should be precluded from referencing before the jury the fact that the City remains a defendant," that the City should not be listed as a defendant on the verdict form, and that the City should be removed from the caption of the case on any document or oral statement given to the jury that includes a caption of the case. Defs' Mot. 27–28. The Court declines to grant this request because the City is, in fact, a defendant. Although plaintiff's *Monell* claims against the City are not being tried in the instant trial, claims against the City *are* being tried under a *respondeat superior* theory because the City is responsible for certain tortious acts of its employees. *See Martinez v. City of New York*, No. 16-cv-00079, 2022 WL 17090267, at *8 (E.D.N.Y. Nov. 18, 2022) ("[T]he City remains a party to this action under the doctrine of respondeat superior for

18

[plaintiff]'s . . . claims of assault and battery. As such, the Court will not change the caption of this case or otherwise structure the trial to prevent the jury from learning this fact."). Accordingly, the motion is DENIED in this respect.

Defendants' request that plaintiff be precluded from referring to defense counsel as "City Attorneys" is GRANTED. Plaintiff may refer to defense counsel as "defense counsel," "Assistant Corporation Counsel," or "attorneys from the Office of the Corporation Counsel." The Court will likewise use these terms in the presence of the jury.

Defendants' request that plaintiff be precluded from mentioning or eliciting evidence of whether defendants may be indemnified by the City is GRANTED on the basis that this information is not relevant to any issue to be determined by the jury.

### F.    Specific Dollar Amount

Defendants move to preclude plaintiff from requesting a specific dollar amount from the jury. Defs' Mot. 29. This motion is DENIED. Although the Second Circuit disfavors specifying target amounts for the jury to award, *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996), "the determination of whether to allow a plaintiff to request a specific amount of damages from the jury is within the Court's discretion." *M.C. v. Cnty. of Westchester, N.Y.*, No. 16-cv-03013, 2022 WL 1124920, at *6 (S.D.N.Y. Apr. 13, 2022) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997)). Although plaintiff will be permitted to suggest a specific dollar amount for damages, plaintiff must provide the specific dollar amount to defendants in advance of closing arguments and may not mention the specific dollar amount until plaintiff's closing argument. Defendants may also propose to the Court a limiting instruction for the jury. *See Dunham v. Lobello*, No. 11-cv-01223, 2023 WL 3004623, at *7 (S.D.N.Y. Apr. 19, 2023).

G.    Punitive Damages

Defendants "respectfully submit that the evidence at trial is unlikely to support a factual finding that the defendants acted with the requisite state of mind necessary to justify an award of punitive damages" and that plaintiff should thus be precluded from seeking punitive damages. Defs' Mot. 30. The Court finds that this request is tantamount to a motion for summary judgment with respect to plaintiff's claim for punitive damages. *See Dollman v. Mast Indus., Inc.*, No. 08-cv-10184, 2011 WL 3911035, at *2 (S.D.N.Y. Sept. 6, 2011). The Court will not consider such a motion on the eve of trial. *See id.* Accordingly, the motion is DENIED. Defendants may, however, "move to dismiss [plaintiff]'s claim for punitive damages after [p]laintiff rests at trial." *Id.*

Even if the Court were inclined at this stage to consider a motion to exclude punitive damages, the Court does not agree that the possibility of punitive damages is so unlikely as to warrant issuing a blanket order precluding plaintiff from pursuing them. Defendants have not established that plaintiff cannot meet the standard for punitive damages. *See DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) ("A jury may 'assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

In the alternative, defendants ask the Court to "preclude plaintiff from referencing punitive damages in her opening statement." Defs' Mot. 30. Because defendants have not established that it is highly likely that the punitive damages claims will be dismissed after plaintiff rests at trial, the Court declines to preclude plaintiff from referencing punitive damages in her opening statement.

Accordingly, defendants' motion is DENIED.

### H.     Unrelated Officer Misconduct and Inflammatory Language

Defendants "request that the Court preclude plaintiff from referring to unrelated purported instances of misconduct, class actions, and criminal investigations." Defs' Mot. 30. Plaintiff represents that she "does not seek to introduce testimony or evidence about officer misconduct other than misconduct attributable to Mr. Sheppard and the experiences of [plaintiff]'s witnesses which are part of the relevant background of their testimony." Pl's Opp'n 45. These topics are addressed elsewhere in the instant Order. *See supra*; *infra.*

Defendants also seek to bar plaintiff "from using terminology and colloquialisms including, but not limited to, such terms as 'testilying,' 'blue wall of silence,' or the like" because "[s]uch statements are highly prejudicial and inflammatory" and "based on conjecture and emotion." Defs' Mot. 31. The Court will not make any blanket rulings *in limine* regarding the exclusion of terminology or colloquialisms, but defendants may raise an objection to such language at trial if used and the Court will consider the objection then.

Accordingly, this request is DENIED without prejudice.

### I.     Preclusion of Fact Witnesses

Defendants seek to preclude in whole or in part the testimony of seven of plaintiff's witnesses who were present at the protest on June 3, 2020: Hunter Petree, Brigid Pierce, Madeline Stocker, Dean Nicolai, Charlie Anderle, Ernesto Lopez, and Destiny Strudwick. Defs' Mot. 32. Defendants explain that "[m]ost, if not all, of these potential witnesses allege that they themselves were . . . falsely arrested or subjected to excessive force" and defendants assert that plaintiff's counsel "will seek to have these witnesses not only describe anything relevant they may have witnessed with respect to plaintiff, but further, testify about alleged misconduct that happened to them." Defs' Mot. 32. Defendants argue

that "such testimony is not remotely relevant to plaintiff's claims, and even if there was some slight relevance, it is significantly outweighed by the substantial prejudice the admission of same would have on defendants." Defs' Mot. 32.

The Court holds that these witnesses may testify, subject to the following caveats. First, these witnesses may testify regarding what they personally observed regarding plaintiff (e.g. the witness's visual perceptions of plaintiff's physical condition). However, should a witness testify regarding any statements made by plaintiff, defendants can raise a hearsay objection that the Court will consider. Second, the Court will apply the same approach with respect to this witness testimony as it will with respect to evidence concerning conduct of other protestors, *see supra* Section I.C ("Evidence . . . will be admitted or excluded on a case-by-case basis at trial depending on the Court's judgment of whether the evidence is relevant to the issues being tried, whether the evidence is too far afield or too granular compared to the central issues in the case, and whether an appropriate amount of time is being devoted to such evidence."). Third, as defendants request, these witnesses may not testify regarding the existence or outcome of any lawsuits they have filed concerning June 3, 2020 because such testimony is not relevant to the instant case. *See* Defs' Mot. 33.

The Court declines to grant defendants' "request that the Court remind [these witnesses] of the limitations as to the scope of their testimony before they testify at trial." Defs' Mot. 33. The Court expects plaintiff's counsel to give effect to the instant Order by not intentionally eliciting any testimony regarding topics that the Court has deemed off-limits. Should plaintiff's counsel ask about, or a witness testify about, an off-limits topic, defense counsel may object at that time.

Accordingly, the motion is GRANTED in part and DENIED in part.

J.    Defendants' Admissions

The Court will rule on defendants' motion to preclude certain admissions at or after the Final Pretrial Conference.

K.    NYPD Procedures and Patrol Guide Provisions

Defendants argue that plaintiff should be precluded from referring to or offering any evidence of NYPD procedures or patrol guide provisions. Defs' Mot. 37.

Defendants first assert NYPD procedures are merely guidelines and have no bearing on the constitutionality of defendants' actions. Defs' Mot. 37. To the contrary, the Court finds that NYPD policies and procedures are relevant to plaintiff's claims. Although a violation of NYPD policies alone does not constitute a constitutional violation—a distinction that could be made clear to the jury in an instruction—an NYPD policy may be relevant to issues that the jury must consider to evaluate plaintiff's claims. These factors include the reasonableness of the officers' conduct, the necessity of the force used, and whether or not the force used against plaintiff was used for legitimate law enforcement purposes. *See Brown v. City of New York*, 798 F.3d 94, 101 n.11 (2d Cir. 2015) (noting that regulations have been considered relevant to constitutional rulings); *McLeod v. Llano*, No. 17-cv-06062, 2021 WL 1669732, at *5 (E.D.N.Y. Apr. 28, 2021) (holding that the NYPD Patrol Guide was generally relevant "in determining how a reasonable NYPD officer would conduct himself under a given set of circumstances"); *Gogol v. City of New York*, No. 15-cv-05703, 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) (collecting cases).

Defendants also assert that any reference to "violations" of NYPD procedure will unnecessarily confuse the jury. Defs' Mot 38. However, the Court believes that the jury can understand that a violation of NYPD procedures is not necessarily equivalent to a violation

23

of the Fourth Amendment. Moreover, this difference can be clearly explained to the jury in an instruction.

Accordingly, defendants' motion is DENIED. Defendants may, however, propose to the Court a limiting instruction.

### L.    Objections to Exhibits

The Court will rule on defendants' motion to preclude certain exhibits at or after the Final Pretrial Conference.

### M.    Body Worn Cameras

The Court will rule on defendants' motion concerning admission of BWC footage at or after the Final Pretrial Conference.

## CONCLUSION

For the foregoing reasons, aside from the motions reserved for later ruling, plaintiff's motions *in limine* are GRANTED in part and DENIED in part, and defendants' motions *in limine* are GRANTED in part and DENIED in part. The Court will rule on the remaining motions *in limine* for which Court has not yet issued a decision in advance of the trial.

**SO ORDERED.**

/s/ Natasha C. Merle
NATASHA C. MERLE
United States District Judge

Dated:    April 15, 2026
          Brooklyn, New York

24